**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Samuel Joseph GIORDANO, Defendant-
Appellant.**

**No. 20658.**

United States Court of Appeals,
Sixth Circuit.

April 12, 1971.

Harry Kobel, Detroit, Mich., for defendant-appellant; Rosin & Kobel, Bellanca & Beattie, Anthony J. Bellanca, Detroit, Mich., on brief.

Alfred G. Kaufman, Jr., Sp. Atty., U. S. Dept. of Justice, Detroit, Mich., for plaintiff-appellee; Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., on brief. James E. Ritchie, Sp. Atty., U. S. Dept. of Justice, Detroit, Mich., of counsel.

Before CELEBREZZE, PECK and BROOKS, Circuit Judges.

CELEBREZZE, Circuit Judge.

This appeal is from a judgment entered pursuant to a limited hearing ordered by the Supreme Court to determine the effect of illegally monitored .conversations on the Appellant's conviction.

The Appellant and two other persons were indicted for conspiracy to conceal and concealing assets in bankruptcy in violation of 18 U.S.C. §§ 2, 152, and 371 (1964). The trial of the case began on January 7, 1964, and continued until January 22, 1964, when it was adjourned due to the illness of one of the defense attorneys. The trial was resumed on March 10, 1964, and testimony was concluded on March 20, 1964. The trial resulted in the conviction of the Appellant and one of the others. Both convictions were affirmed on appeal to this Court, United States v. Ayotte, 385 F.2d 988 (6th Cir. 1967), and the Appellant filed a petition for writ of certiorari with the United States Supreme Court. During the pendency of his petition, the Supreme Court was advised by the Solici-

tor General that during the Government's investigation of the case, a conversation in which the Appellant had participated had been illegally monitored. Acting on this memorandum, the Supreme Court granted the petition for writ of certiorari, vacated this Court's judgment, and remanded the case to the District Court for proceedings in conformity with Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969).

■ Alderman v. United States, *supra,* holds that once the Government is shown to have illegally monitored conversations of a defendant who was subsequently convicted, adversary hearings must be conducted to determine whether "fruits" of the unlawful surveillance contributed to, or were "relevant" to, the conviction. In so holding, the Supreme Court rejected the Government's argument that "arguable relevance" should first be determined by the District Court, after an *in camera* examination of the Government's records of the surveillance. 394 U.S. at 181, 89 S.Ct. 961. "[I]n our view," the Court held, "the task [of determining relevance] is too complex, and the margin for error too great, to rely wholly on the *in camera* judgment of the trial court to identify those records which might have contributed to the Government's case." 394 U.S. at 182, 89 S.Ct. at 971. In this adversary context, after an illegal search has come to light, the Government "has the ultimate burden to show that its evidence is untainted." 394 U.S. at 183, 89 S.Ct. at 972. In order to insure that the hearings be more than a "formality," and to enable the defendant to "go forward with specific evidence demonstrating taint," if he can, 394 U.S. at 183, 89 S.Ct. at 972, the Government is required to produce, for the defendant's examination, "transcripts of a defendant's own conversations and of those which took place on his premises." 394 U.S. at 184, 89 S.Ct. at 972. In addition, the Government must produce the federal agents

responsible for investigating the case, so that the defendant may cross-examine them concerning the extent of dissemination. *See* United States v. Alderisio, 424 F.2d 20, 24 (10th Cir. 1970).

"Armed with the specified records of overheard conversations and with the right to cross-examine the appropriate officials in regard to the connection between those records and the case made against him, a defendant may need or be entitled to nothing else." 394 U.S. at 185, 89 S.Ct. at 973.

Upon remand, the Government disclosed to the Appellant and his counsel that the Federal Bureau of Investigation had electronically eavesdropped on a conversation in which the Appellant participated on February 10, 1964, which was during the recess period in the Appellant's original trial. The magnetic tape of this unlawfully monitored conversation had been destroyed, and the Government had not, apparently, transcribed it. The F.B.I. did furnish the Appellant with its "log" of the conversation. A "log" is a record which may contain summaries or paraphrased portions of dialogue of only parts of monitored conversations, and which may omit portions of monitored conversations, at the monitoring agent's discretion. At the remand hearing in the instant case, the F.B.I.'s "log" of the February 10, 1964 conversation was shown to have contained only parts of conversations that were not relevant to the Appellant's conviction; the log omitted 20 to 25 minutes of conversation by the Appellant about the transaction for which he was later convicted. As an apparent attempt to supplement the deficient February 10, 1964 "log," the F.B.I. also turned over to the Appellant a "log" of a conversation on February 11, 1964, between two *other* individuals, which contained *their* conversation *about* the Appellant's February 10, 1964 conversation.

The Government's only witness at the remand hearing was Mr. Robert Keehan, who headed the F.B.I.'s investigation of the Appellant's case prior to trial. He

was taken off the case by the time of the trial, and when the illegal monitoring took place, another federal investigator had been put in charge of the Appellant's case. Mr. Keehan testified that he was not aware of the existence of the "logs" until 1969, five years after the original trial, and that he did not secure any evidence against the Appellant as a result of the illegal surveillance.

The Appellant then testified, on his own behalf, that the February 10, 1964 "log" did omit reference to 20 to 25 minutes of conversation about the transaction for which he was later convicted. Then, in proceedings before the court, Appellant's counsel pointed out that a month after the illegal monitoring, on March 10, 1964, when the trial of the Appellant's case was resumed, the Government put on a substantial amount of its case, including 20 witnesses, some of whom may have been secured through the illegal monitoring.

On this record, the District Court held that the Government had borne its "ultimate burden of persuasion" that the evidence leading to the Appellant's conviction was untainted. The court then entered a new judgment of conviction and sentence, and the Appellant brought this appeal.

■ The Appellant argues that under the circumstances of this case, the Government did not satisfy the disclosure requirements of *Alderman*. We agree.

The inquiry into relevance required by *Alderman* presupposes that the Government will supply the defendant with all its records of illegally monitored conversations. Where the actual magnetic tapes of monitored conversations have been destroyed, and transcripts thereof were not made, incomplete substitutes, such as "logs," have been found sufficient only where the Government was able to prove, by testimony or otherwise, that the "logs" were the only records of the conversations available to the agents who investigated the case, and that the "monitors," the agents responsible for

preparing the "logs" from the tapes, did not communicate, orally or otherwise, any information other than that contained in the "logs" to those investigating the case. *See* United States v. Clay, 430 F.2d 165, 168–170 nn. 6, 8 (5th Cir. 1970), cert. granted, 400 U.S. 990, 91 S. Ct. 457, 27 L.Ed.2d 438; Baker v. United States, 139 U.S.App.D.C. 126, 430 F. 2d 499, 500 n. 4 and accompanying text, 501 n. 7 (1970); United States v. Alderisio, 424 F.2d 20 (10th Cir. 1970). Clearly, if the Government can show that "logs" of a monitored conversation were the only records of it that were available to the agents who investigated the case, and that the "logs" do not contain matter prejudicial to the defendant, then the Government is entitled to a judgment.

In the instant case, the record does not disclose whether information other than that disclosed in the "logs" was transmitted to those responsible for investigating the Appellant's case. The Government did not call the "monitors" as witnesses, hence, there is no evidence whether they communicated material to the investigators that was not contained in the "logs." Nor did the Government produce, for the defendant to cross-examine, the agent in charge when the illegal monitoring took place. Only he could testify as to the extent of dissemination of whatever illegal surveillance that was communicated to him. In addition to the complete records of the surveillance, the defendant had "the right to cross-examine the appropriate officials in regard to the connection between those records and the case made against him." 394 U.S. at 185, 89 S.Ct. at 973. The case must be remanded to allow the Appellant to cross-examine these individuals. If the Government does not come forward with them, then the District Court will have no alternative but to dismiss the proceeding and enter judgment for the Appellant. 394 U.S. at 184, 89 S.Ct. 961.

The case is remanded for the limited purposes designated herein.