**UNITED STATES of America, Appellee,**

v.

**Amos Lane BRIDGES, Appellant.**
**No. 73–1796.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 24, 1974.

Decided June 12, 1974.

Rehearing Denied July 8, 1974.

Norman S. London and Lawrence J. Fleming, St. Louis, Mo., for appellant.

Henry A. Schwarz, U. S. Atty., and William C. Evers, III, Asst. U. S. Atty., E. St. Louis, Ill., for appellee.

Before KILEY, Senior Circuit Judge, CUMMINGS, Circuit Judge, and HOFF-MAN, Senior District Judge.*

KILEY, Senior Circuit Judge.

Defendant Bridges was convicted, by a jury, of unlawfully possessing and using an unregistered dynamite bomb to damage a building, in violation of 26 U. S.C. § 5861(c) and (d) and 18 U.S.C. §

---

* Senior District Judge Julius J. Hoffman of the Northern District of Illinois sitting by designation.

844(i).[1] We reverse the conviction and remand for a new trial.

We recite the evidence in the light most favorable to the government. At approximately 9:30 p. m. on April 8, 1972, a building used by the Teamsters Union, of which Bridges was a member, was bombed in East St. Louis, Illinois. There had been a controversy between Bridges and the Union over non-payment of dues and a telephone bill, resulting in his suspension from the Union. Bridges had threatened to "thump" the head of one Union official over the issue of the dues. A half hour before the bombing, two men were observed next to the building near a car that resembled Bridges'. Dynamite particles were found in the blast debris, and dynamite components were found in the swabs taken of Bridges' hands and the debris collected from the trunk of his car and the vacuum cleaner in his house.

## I.

■ At the close of the government's case, the court denied Bridges' motion for acquittal. We find no error in that ruling. The evidence recited above was prima facie sufficient to justify an inference of guilt.

## II.

Bridges contends that the court committed reversible error in denying his motion for mistrial after a government witness testified that Bridges refused to answer a question concerning his recent handling of explosives.

Bridges learned that he was a suspect in the case and surrendered himself, on the advice of counsel, on April 11, 1972 at a local police station. Federal agents arrived and, after reciting the *Miranda* warnings, interrogated him.

At the trial the prosecutor asked one of the agents:

Q. What questions did you ask of him and what answers did he give you?

A. I asked him if he handled any explosives. He declined to answer.[2]

The court sustained a motion by Bridges' counsel to strike, and instructed the jury to disregard the answer, but denied his motion for a mistrial. The prosecutor thereafter asked the agent:

Q. Did you ask Mr. Bridges if he had handled any explosives recently?

A. Yes, sir.

Q. And what did he tell you when you asked that question?

A. He declined to answer.[3]

Again the court denied a motion for a mistrial and repeated the first ruling. Subsequently the prosecutor asked another agent:

Q. Was Mr. Bridges asked if he had handled any explosive materials recently?

A. Yes.

Q. What did he reply?

A. He declined to answer.[4]

The court for the third time denied a motion by Bridges' counsel for a mistrial.

---

1. § 5861. Prohibited acts—It shall be unlawful for any person—

    ❊ ❊ ❊ ❊ ❊

    (c) to receive or possess a firearm made in violation of the provisions of this chapter; or

    (d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record;

    . . . .

    § 844(i) Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any

activity affecting interstate or foreign commerce shall be imprisoned for not more than ten years or fined not more than $10,000, or both; and if personal injury results shall be imprisoned for not more than twenty years or fined not more than $20,000, or both; and if death results shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment as provided in section 34 of this title.

2. Tr. 138.

3. Tr. 145.

4. Tr. 219.

■ We hold that the court's denial of the motions for mistrial was constitutional error because the agents' testimony violated Bridges' Fifth Amendment right against self-incrimination and compels reversal of his conviction.

In recent opinions [5] we have expressed a concern over conduct of overzealous prosecutors. We shall presume in fairness that the prosecutor did not anticipate the agent's answer to the first question. But we cannot indulge that presumption with respect to the prosecutor's second and third series of questions which specifically elicited the prejudicial answers given to the first question. The prosecutor should have known that Bridges had the right not to answer, yet deliberately disregarded that right. In fact, he apparently claimed that he was entitled to disregard Bridges' rights.[6]

In Kroslack v. United States, 7 Cir., 426 F.2d 1129, 1130–1131 (1970), this court responded to a similar, though less serious, violation, stating:

It was reversible error for the agent to testify that when the defendant was questioned he refused to make a statement. Baker v. United States, 5th Cir., 357 F.2d 11 (1966). . . . We find little difference between the prejudice resulting from the testimony admitted in the case before us, and a prosecutor's comment before a jury on a defendant's exercise of his constitutional right not to take the witness stand. Such comments have been held to be reversible error. Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The testimony elicited here could well have led the jury to infer guilt from defendant's refusal to make the statement. We think exercise of a constitutional privilege should not incur this penalty. Id. at 614, 85 S.Ct. 1229. (Footnote omitted.)

### III.

Following Bridges' refusal to answer the questions concerning his handling of explosives at the April 11, 1972 interrogation, the federal agents swabbed his hands. On the basis of the chemical analysis of the swabs, the agents obtained a warrant, searched Bridges' car, collected debris from the interior and trunk of the car, and swabbed the interior. The agents subsequently obtained another warrant and searched Bridges' house for a vacuum cleaner which contained material similar to that found in the trunk of his car.

The court, after a pre-trial hearing, denied Bridges' motion to suppress the analysis of his hand swabbing, on the ground that it was done in violation of his Fourth and Fifth Amendment rights; and to suppress the materials seized in the searches, on the ground that the affidavits supporting the warrant applications contained untruths and that therefore the warrants were improperly issued.

At the hearing Bridges testified that neither he nor his attorney consented to the hand swabbing, that he attempted to call his attorney during the interrogation but could not reach him, and that he eventually offered his hands for swabbing because the only "other alternative would have meant a little hassle,

---

5. United States v. Ott, 7 Cir., 489 F.2d 872 (1973); United States v. Trutenko, 7 Cir., 490 F.2d 678 (1973) (Chief Judge Swygert dissenting); Epperson v. United States, 7 Cir., 490 F.2d 98 (1973) (Judge Pell dissenting).

6. He stated:
   If Your Honor please, the jury has a right to know what Mr. Bridges said. His statements are admissible into evidence as admissions against his interest and the jury should be entitled to know whether or not he handled explosives. He refused to answer that question. I asked that question and made no comment on that statement. It is my position that all persuasive pieces of evidence available to the Government to show the guilt of Mr. Bridges are admissible. This is one fact in a long series of doubt which this witness suggested as such. I am merely presenting all the facts to the jury. (Tr. 220.)

I imagine." [7] The agents testified that Bridges submitted to the swabbings without protest and did not use the available telephones.

The court found that Bridges had consented to the swabbing; that even if he had not, his Fifth Amendment right was not violated because the swabbing was not testimonial; that the swabbing without his consent was not an unreasonable search and seizure; and that there was probable cause to issue the warrants since the minor discrepancies in the affidavits were insufficient to invalidate the warrants.

Bridges contends the court erred in denying the motion to suppress. We disagree.

### A.

■ The district court did not err in denying the motion on the Fifth Amendment ground. We think that swabbing, like drawing the defendant's blood in Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), was not a violation of that Amendment's protection against self-incrimination, since the swabbing did not "provide the state with evidence of a testimonial or communicative nature. . . ." *Id.* at 761.

Neither did the court err in denying the motion on the Fourth Amendment ground.[8]

In *Schmerber* the Court held that the warrantless intrusion into Schmerber's body for blood was reasonable in light of the exigent circumstances therein; the blood was drawn to determine its alcoholic content which diminishes rapidly in time.

The Second Circuit, in United States v. D'Amico, 2 Cir., 408 F.2d 331, 333 (1969), held that admission into evidence of clippings of D'Amico's hair did not violate his Fourth Amendment right. The court stated:

> Some official in-custody investigative techniques designed to uncover incriminating evidence from a person's body are such minor intrusions into or upon the "integrity of an individual's person" ([*Schmerber*] 384 U.S. at 772 . . . .), that they are not, in the absence of a search warrant, unreasonable intrusions. (Footnote omitted.)

It is apparent that had the agents not swabbed Bridges' hands at the time, the opportunity may not have knocked again, especially if Bridges washed his hands. Accordingly, we find that the intrusion upon Bridges was similar to that in *Schmerber* and *D'Amico*. The swabbing was no more offensive to Bridges' person than fingerprinting or photographing him. *Schmerber,* at 764; *D'Amico,* at 333. We hold that the swabbing was not an unreasonable search, and affirm the district court's ruling.

### B.

We turn to the remaining issue of whether the warrants were issued without probable cause.

■ The transcript of the suppression hearing supports the district court's finding of sufficient facts in the affidavits to establish probable cause: statements relating to the agents' investigation of the scene of the crime, interviews with witnesses and Union officials, and the interrogation of Bridges.

■ The court also decided that the two minor factual errors in the affidavits did not vitiate the warrants.

Assuming arguendo that this court's decision in United States v. Carmichael, 7 Cir., 489 F.2d 983 (1973), reached back to the *Bridges* suppression hearing, it would not require a finding of error

---

7. Tr. 8.

8. We are not persuaded that the evidence supports the district court's finding that Bridges consented to the swabbing. In the circumstances of the station-house interroga- tion, the evidence does not show consent with the clear and convincing evidence required. United States v. Como, 340 F.2d 891 (2nd Cir. 1965) ; Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L. Ed.2d 797 (1968).

in the court's decision. In Carmichael we held that "(1) any misrepresentation by the government agent of a material fact, or (2) an intentional misrepresentation by the government agent, whether or not material" will invalidate a search warrant and require suppression of the evidence. *Id.* at 988.

■ The factual errors herein were (1) a statement that dynamite had been found on Bridges' hands, whereas only components of dynamite were found, and (2) a statement that Bridges consented to the swabbing on advice of his counsel, when actually his counsel advised him merely to report to the police station.

We think the first misstatement is an unintentional misrepresentation of an immaterial fact because the distinction between the components of dynamite and dynamite itself could not affect probable cause.

We also think that the second error was unintentional. It is probable that, since Bridges had informed the agents that he was present on the advice of his attorney, they assumed the attorney also advised him to consent to the swabbing. Also, whether he consented to the swabbing is immaterial to the issue of probable cause.

Accordingly, we hold that the search warrants were validly issued and that the evidence obtained need not be suppressed.

## C.

■ Bridges also contends that the district court erred in failing to suppress the results of the chemical analysis of the hand swabbing on the ground that the extracts from the swabs were consumed in the course of the analysis and consequently not made available to Bridges for pre-trial discovery.

In denying the motion to suppress, the court found that there was no showing that the government deliberately destroyed the swab extracts; that results of the analysis were given to Bridges; and that at trial his counsel could chal-

lenge the procedures used in the analysis, and could introduce the results of independent analysis of samples of other evidence tendered by the government.

Subsequent to the court's ruling, the Fifth Circuit held, in United States v. Love, 482 F.2d 213 (1973), in affirming defendant's conviction for violating the same statutes as herein, that the destruction through chemical analysis of hand swabs taken of the defendant did not require their suppression at defendant's trial.

We agree with that decision and with the reasoning of the district court below. While it would be better practice in the future for a defendant's expert to be present during the testing when it appears that the samples will be destroyed, we hold that the court's ruling was not erroneous.

## D.

■ There is no merit in Bridges' contention that the court erred in admitting the swabs and debris taken from the blast site for insufficient proof of chain of custody. The trial court's discretionary ruling on identification of evidence sufficient for its admissibility is subject to reversal only for an abuse of discretion. Brewer v. United States, 353 F.2d 260 (8th Cir. 1965); Gallego v. United States, 276 F.2d 914 (9th Cir. 1960). There was no abuse in this case. The government need not exclude all possibilities of tampering with evidence. As the court said in *Gallego*: "If . . . the trial judge is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in[to] evidence." 276 F.2d at 917.

## IV.

■ Bridges also contends that the district court erred in refusing to give his instruction on reasonable doubt and burden of proof. We have read Bridges' rejected instruction and are satisfied that the court did not err in declining to

give it, since it was substantially duplicative of the instruction that was given. United States v. Fellabaum, 408 F.2d 220, 227 (7th Cir. 1969).[9]

Bridges also challenges the following given instruction:

The burden of proving the charge in the indictment is upon the Government, and it is required to prove the charges set forth in the indictment beyond a reasonable doubt. The burden of proof never shifts to the defendant. The law does not require a defendant to prove his innocence or to produce any evidence. He may rely on the evidence brought out on cross examination of witnesses for the Government. If the Government proves its case as made in the indictment beyond a reasonable doubt, then it is your duty to return a verdict of guilty. If, however, the Government does not prove its case against this defendant beyond a reasonable doubt, then it is your duty to return a verdict finding the defendant not guilty.

Reasonable doubt means exactly what the words indicate, a doubt that is reasonable, taking into consideration all of the evidence and the law as given you by the court in these instructions. It does not mean that you have the right or privilege to go outside the evidence to hunt up doubt, and a fanciful, imaginary doubt that does not arise from the law and the evidence should not enter into your verdict in this case.

Now, there is nothing mysterious about the term "reasonable doubt." It is not for the purpose of permitting guilty men to escape, but it is a rule for the protection of the innocent.

Reasonable doubt does not mean a probability of a doubt or a possibility of a doubt or a speculative doubt, but it is a substantial doubt based upon the evidence or lack of evidence in the case.

If, upon consideration of all the evidence in the case, you have an abiding conviction of the guilt of the defendant amounting to a moral certainty, then the defendant has been proven guilty beyond a reasonable doubt and it would be your duty to find him guilty.

We find two paragraphs of the given instruction objectionable: the paragraph stating that "reasonable doubt" is not for the purpose of "permitting guilty men to escape," and the paragraph equating "reasonable doubt" with "substantial doubt." On retrial, those paragraphs should be deleted.

Contrary to what the government implied in its brief, neither of the objectionable paragraphs is approved in the LaBuy "Jury Instructions in Federal Criminal Cases." Both have been criticized in several cases from other Circuits: "permitting guilty men to escape"—Reynolds v. United States, 238 F.2d 460 (9th Cir. 1956), and Gomila v. United States, 146 F.2d 372 (5th Cir. 1944); "reasonable doubt" equated with "substantial doubt"—United States v. Atkins, 487 F.2d 287 (8th Cir. 1973), and United States v. Alvero, 470 F.2d 981 (5th Cir. 1972).

We reverse and remand for a new trial.

9. For the same reason, we reject Bridges' contention that the court erred in failing to give his "position" instruction. ("It is the position of the defendant" that he is not guilty of the offense.) The instructions given by the court were substantially the same as the rejected position instructions.