**UNITED STATES of America, Plaintiff-Appellee, v. Teddy R. CROUCH et al., Defendants-Appellants.**

**Nos. 74–2057 to 74–2066.**

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1975.

Decided Jan. 16, 1976.

Rehearing and Rehearing En Banc Denied March 18, 1976.

---

Lance Callis, Granite City, Ill., Bruce N. Cook, Haig Apoian, E. St. Louis, Ill., Lawrence J. Fleming, St. Louis, Mo., H. Carl Runge, Jr., E. St. Louis, Ill., John R. Sprague, Jr., Paul M. Storment, Jr., Belleville, Ill., for defendants-appellants.

Donald B. Mackay, U. S. Atty., J. Douglas Weingarten, Asst. U. S. Atty., Springfield, Ill., Max E. Goodwin, Sp. Asst. U. S. Atty., Mann, Mann, Chaney, Johnson & Hicks, Terre Haute, Ind., for plaintiff-appellee.

Before CLARK, Associate Justice (Retired),* STEVENS, Circuit Justice,** and GRANT, Senior District Judge.***

GRANT, Senior District Judge.

The appellants were charged in a 58-count indictment which alleged one count of conspiracy against all defendants, in violation of 18 U.S.C. § 371, and 57 counts of substantive offenses, in vio-

---

\* Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation.

\*\* Mr. Justice Stevens participated initially as Circuit Judge, and on and after December 19, 1975 as Circuit Justice.

\*\*\* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana is sitting by designation.

lation of 18 U.S.C. §§ 659 and 2. Each defendant was not charged in each substantive count; some defendants were charged with as many as 18 substantive counts, while others were charged with only two. All charges related to the theft and disposition of property being transported as interstate freight through the Terminal Railroad Yards in Madison, Illinois, during a period from May 1, 1971, through October 12, 1973. After trial, all defendants were convicted of the conspiracy count, and all defendants were convicted of at least one of the substantive counts in which they were named. The appellants received sentences ranging from a maximum of 22 years to a minimum of four years.

Appellants have now instituted the present appeal in which they challenge their convictions in the court below. In support of their appeal, appellants have raised a myriad of issues for this Court's consideration. This Court has embarked upon an extensive review of all of the issues raised by appellants in their briefs and in oral argument. However, because we are convinced, on the basis of the record, that many of the issues herein presented are clearly without merit, this opinion will discuss only those matters which have impressed the panel as being substantial enough to require extensive treatment. Having considered all of the issues presented, and for the reasons stated below, we affirm the convictions of the appellants in the district court.

## I—ELECTRONIC SURVEILLANCE

Prior to trial, it was learned that the Terminal Railroad Police at the Madison Yard had engaged in extensive electronic surveillance in which conversations between and among several of these defendants had been intercepted. The district court held a two-day hearing on defendants' several motions to produce and to suppress the fruits of that surveillance. It developed during that hearing that, although no true logs were kept to monitor the three yard office extensions, a piece of paper was kept at each of the three extensions on which notes were made by the persons who used the monitor, one of which was William S. Wagner, then Chief of Police for the Terminal Railroad Association. Unfortunately, all tapes and notes were subsequently destroyed by Chief Wagner prior to his retirement in late 1973. At the conclusion of the hearing, the court below denied defendants' motions to suppress. In this appeal, appellants contend that the district court erred in so ruling because the government's disclosure of the information obtained by the wiretap was grossly inadequate and in violation of 18 U.S.C. § 2518(8)(a), which reads, in pertinent part, that: "The contents of any wire or oral communication intercepted . . . shall, if possible, be recorded on tape or wire or other comparable device. * * * They shall not be destroyed except upon an order of the issuing or denying judge . . . ." Based on the destruction of the material which occurred herein, appellants argue that there has been a total failure to comply with the provisions of the above statute.

Appellants further argue that the court below erred in failing to find that all defendants were "aggrieved persons" under 18 U.S.C. § 2510(11). In any event, appellants maintain that in the instant case the electronic surveillance upon them violated their reasonable expectation of privacy under the Fourth Amendment to the Constitution.

In response to these claims, the appellee, although conceding that there were irregularities involved as to the surveillance, nonetheless maintains that it met its initial disclosure obligation by means of written disclosures and by making certain witnesses available for examination by defendants, thereby affording defendants the opportunity to develop any indication of taint that might have existed. Further, appellee contends that appellants herein failed to meet their burden of showing that a substantial portion of the case against them was tainted. In any event, appellee argues that the evidence which it adduced, even if taint was demonstrated, was derived

from a legitimate independent source; and finally, that any existing taint was sufficiently attenuated when witness Joel Koen made a free and voluntary choice to cooperate with the government in its prosecution of the case. It is argued, then, that the court below properly ruled that the illegal surveillance by the Railroad Police did not require suppression.

We turn initially to a discussion of the ramifications of 18 U.S.C. § 2518(8)(a). As noted earlier, it would appear that the underlying purpose of the statute is to insure an adequate disclosure of the contents of any and all intercepted communications. *Alderman v. United States,* 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1967). In this regard, it has been held that where the tapes of monitored conversations have been destroyed, substitutes (such as logs) have been found to be sufficient under certain circumstances. *United States v. Giordano,* 440 F.2d 449, 451 (6th Cir. 1971). We must keep in mind, nevertheless, that where, as here, there has been a destruction of evidence, the interest of fair play demands that it must not be impossible for a defendant to carry his burden of demonstrating taint at the taint hearing. Accordingly, we are compelled herein to "strictly scrutinize the government's claim of independent source." *United States v. Huss,* 482 F.2d 38, 48 (2d Cir. 1973). As noted in *Alderman, supra,* 394 U.S. at 183, 89 S.Ct. 961, although petitioners must initially go forward with specific evidence demonstrating taint, the United States in a case where (as here) an illegal search is involved, has the ultimate burden of persuasion to show that its evidence is untainted. This leaves ample opportunity to the government to convince the trial court that its proof had an independent origin.

Although we do not condone the activity of the private railroad police in the destruction of the material pertaining to the monitored conversations, we are convinced, first of all, that even though said material was destroyed, the record herein adequately demonstrates, and the district court so found in its "informed discretion, good sense, and fairness" [1] that, under the particular circumstances of this case, the government met its disclosure obligations under *Alderman* and *Giordano, supra,* and *United States v. Balistrieri,* 436 F.2d 1212 (7th Cir. 1971), cert. denied, 402 U.S. 953, 91 S.Ct. 1620, 29 L.Ed.2d 124 (1971). Initially, we note that at the two-day evidentiary hearing on the electronic surveillance issue, the government made available for examination some eleven witnesses who had some connection—in some instances, even personal knowledge—with respect to the surveillance that took place within the Madison Yard complex during the time period in question. These witnesses included two F.B.I. agents who participated in the investigation of the electronic surveillance, the F.B.I. agent in this case, as well as two undercover agents who had been instrumental in developing evidence in the case. Also available for examination by defendants were the three persons who used the monitor, Inspector James Lockett, Lt. James Davis, and Chief Wagner. Under these circumstances, although the defendants admittedly lacked the benefit of tapes and/or memoranda upon which to attack the nature of the surveillance which was conducted, we conclude that the availability of these witnesses afforded the defendants sufficient information as to the character and totality of the surveillance involved herein so that they might be able to go forward to show taint. Needless to say, we are not convinced that defendants met their burden in this regard. Nevertheless, as noted above, in such a situation it was then incumbent upon the government to meet the ultimate burden of persuasion and show that its evidence was untainted. *Alderman, supra,* 394 U.S. at 183, 89 S.Ct. 964. This burden which devolved upon the government, we believe, was satisfied when appellee demonstrated

1. *See Nardone v. United States,* 308 U.S. 338, 341–342, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

that it obtained its basic evidence from the witness Joel Koen—who, as an eyewitness to the events that transpired herein, made a voluntary choice to divulge much of the information upon which the government's case rested. *Wong Sun v. United States,* 371 U.S. 471, 491, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Marder,* 474 F.2d 1192, 1196 (5th Cir. 1973); *United States v. Hoffman,* 385 F.2d 501, 504 (7th Cir. 1967). Further, we have no doubt that the potential of Koen as a witness and/or defendant was not learned solely from the overheard conversations. Rather, it is totally consistent in the record that information as to the significance of Koen as a witness was discovered through the efforts of A.T.F. Agent David True who, it appears, had no knowledge of the wiretap, during his investigation of and direct contact with many defendants, including Ronald Ridgeway and William Ryan. Accordingly, since it is apparent that the government's source of information was indeed wholly independent of the illegal surveillance, it is clear that any alleged taint was completely attenuated thereby. *Nardone, supra,* 308 U.S. at 341, 60 S.Ct. 266.

As to the appellants' argument that the court below failed to find that all defendants were "aggrieved persons" under 18 U.S.C. § 2510(11), we note that the trial court found that only defendants Nordstrom, Frederick, and possibly Ryan were aggrieved parties and that the other seven defendants lacked standing to seek suppression. We need not tarry long over this issue, however, in light of our conclusion immediately above that suppression was not required under the circumstances of the instant case. Accordingly, the question of whether or not the district court correctly determined that three of the defendants had standing and seven of them did not need not be addressed by the panel at this juncture.

## II—INSTRUCTION ON REASONABLE DOUBT

When the court below gave its charged to the jury, it included the following instruction on burden of proof and reasonable doubt:

A defendant in a criminal case is presumed by law to be innocent. That presumption remains with him throughout the trial unless and until he is proven guilty of the crime charged by credible evidence beyond a reasonable doubt.

The burden of proving defendant guilty beyond a reasonable doubt rests upon the government. This burden never shifts throughout the trial. The law does not require a defendant to prove his innocence or to produce any evidence. He may rely upon evidence brought out on cross-examination of witnesses for the government. If the government fails to prove defendant guilty beyond a reasonable doubt the jury must acquit him.

A reasonable doubt means a doubt that is based on reason and must be substantial rather than speculative. It must be sufficient to cause a reasonably prudent person to hesitate to act in the more important affairs of his or her life.

The defendants timely challenged the giving of this instruction, grounding their objection on the court's attempt to define reasonable doubt, and in particular, the equating of reasonable doubt with substantial doubt. The government responds by contending that the instruction given by the court, which was taken directly from LaBuy, *Jury Instructions in Federal Criminal Cases* § 6.01–3, instead of equating reasonable doubt with substantial doubt, equates reasonable doubt with a doubt based on reason. In any event, appellee argues that the court's instruction, taken as a whole, properly conveyed to the jury the concept of reasonable doubt.

This Court, as of recent months, has engaged in a thorough review of the propriety and impropriety of instructions which attempt to define the term reasonable doubt and the language used therein. In *United States v. Bridges,* 499 F.2d 179, 186 (7th Cir. 1974), for example, we stated that the equating of

reasonable doubt with substantial doubt is objectionable. More recently, in *United States v. Gratton,* 525 F.2d 1161 (7th Cir. 1975), where the trial court gave the challenged LaBuy instruction, we reaffirmed our position as stated in *Bridges, supra.* However, in *Gratton,* we failed to find plain error in the absence of an objection under F.R.Crim.P. 30. Finally, in what is probably our most extensive discussion on the question, we gave our approval to the form of the instruction which was used in the instant case (minus the "two hypothesis" portion) in the case of *United States v. Shaffner,* 524 F.2d 1021 (7th Cir. 1975). In *Shaffner,* after noting our approval of that portion of the instruction which had been given by the trial court, we reaffirmed our adherence to the general proposition that reviewing courts will not reverse where the instruction considered as a whole is not prejudicially erroneous.

▮ In regard to the instant case, although we recognize the objectionable nature of the particular portion of the instruction which refers to reasonable doubt and substantial doubt, we are not prepared to say, in light of the instruction considered as a whole, that reversible error was committed. As we stated in *Shaffner, supra,* "considering the instruction as a whole, we do not think that the defendant's rights to be presumed innocent, to remain silent, and to have the government bear its burden of proof were violated." We are of the opinion that that same rule is applicable here.[2]

## III—CONSPIRACY

Appellants contend that there existed in the instant case not one scheme or conspiracy, but a multitude of separate conspiracies; and that, because of the existence of this host of conspiracies, it was error for the trial court to deny their motions for severance. Further,

appellants argue that because of the multitude of conspiracies that allegedly existed, the court below was in error in submitting the conspiracy issue to the jury on a single conspiracy instruction. For these reasons, it is argued by appellants that they did not receive a fair trial.

On the other hand, appellee claims that the evidence established that all of the appellants herein were members of a large-scale, open-ended conspiracy to steal from shipments passing through the Terminal Railroad Association and thereafter to "fence" said merchandise. In this regard, it is argued that each defendant was a member of the overall conspiracy at some point in time during its existence and that the defendants worked together in a variety of combinations and roles, the only reasonable inference being that all of them shared in a common plan or design. Accordingly, this Court is urged to affirm the trial court's denial of appellants' motions for severance as well as the trial court's decision not to instruct the jury on multiple conspiracies.

▮ As to the question of severance, it is clear that severance should not be granted except for the most cogent reasons. *United States v. Kahn,* 381 F.2d 824, 838 (7th Cir. 1967); cert. denied, 389 U.S. 1015, 88 S.Ct. 591, 19 L.Ed.2d 661 (1967); reh. denied, 392 U.S. 948, 88 S.Ct. 2272, 20 L.Ed.2d 1414 (1968). One of the most, if not the most, compelling factors in favor of granting severance is if the moving party shows prejudice—that is, that he will be unable to obtain a fair trial without severance. *United States v. Cervantes,* 466 F.2d 736, 739 (7th Cir. 1972). Absent a strong showing of prejudice, the denial of a motion for severance will not be reversed on appeal. *United States v. Griffin,* 464 F.2d 1352, 1358 (9th Cir. 1972). In the

---

**2.** Although we want to make it clear that the language incorporated into the reasonable doubt instruction in the instant case is indeed suspect and definitely not preferred, it should be noted that when the court below gave the instruction in question to the jury in this case,

it did not have the benefit of this Court's decision in *Gratton, supra,* or the reasoning therein. Had this Court's decision in *Gratton* been available for the trial court's consideration, it would be necessary to exercise our supervisory power and decide otherwise.

present case, we are unable to conclude, on the basis of our careful review of the record, that any of the appellants was prejudiced by being tried jointly.

█ Likewise, we fail to agree with appellants' argument that they were substantially prejudiced by the district court's failure to give a multiple conspiracy instruction. It is clear to this panel that the evidence, when viewed in the light most favorable to the government, together with all the reasonable inferences flowing therefrom, permitted the jury to conclude, as it did, that there was a single, overall conspiracy and that each defendant was a participating member of it at some point in its duration. *United States v. Santana,* 503 F.2d 710, 715 (2d Cir. 1974); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). Therefore, we decline to find error or that appellants did not receive a fair trial when the district court denied their motions for severance and when the court below refused to give a multiple conspiracy instruction to the jury.

## IV—IMMUNITY OF JOEL HARDY KOEN

Appellants assert that the district court committed reversible error in refusing to grant their motion for mistrial when: (1) the government permitted the witness Koen to take the stand with knowledge that he would invoke his Fifth Amendment privilege; and (2) when the court and the prosecutor commented to the jury regarding the immunity which had been granted to the witness. It is argued that the comments made as to Koen's immunity served only to enhance his credibility in the eyes of the jury and thus resulted in substantial prejudice. Additionally, in a related argument, appellants maintain that the trial court unduly restricted the cross-examination of Joel Koen on the question of his immunity and as to various other subjects concerning his credibility.

In response, appellee contends that there was no flagrant attempt by the prosecution herein to bolster its case as a result of Koen's invocation of the privilege, nor were there any impermissible inferences that could have been drawn therefrom which might have added critical weight to the government's case. It is further asserted by appellee that the court's comments to the jury as to Koen's grant of immunity merely served to enhance their understanding of an otherwise difficult concept. Such comment could not possibly, appellee argues, have resulted in any prejudice against appellants. Additionally, the government contends that its own remarks as to Koen's immunity, which were made in rebuttal to defendants' closing remarks, were merely an invited response to, and fair comment upon, a matter which had already been raised and focused upon by defendants' counsel in their closing statements to the jury. Finally, appellee contends that the district court, in its discretion, properly controlled the extent of Koen's cross-examination, as well as the cross-examination of other witnesses, based on valid considerations of relevancy, materiality, and keeping such examination within the scope of the subjects covered on direct examination.

█ As to appellants' first contention—that of prosecutorial misconduct—we have carefully viewed the record and fail to find therein evidence of a conscious and flagrant attempt on the part of appellee to build its case out of the inferences arising from the use of the testimonial privilege. Moreover, we cannot find any indication that any impermissible inferences could have been drawn from the fact that Koen invoked his testimonial privilege since the witness took the stand, testified, and was the subject of rather extensive cross-examination. *United States v. Puntillo,* 440 F.2d 540, 543 (7th Cir. 1971).

█ With respect to the trial court's comments to the jury on Koen's grant of immunity and appellants' claim that said comment simply compounded an already prejudicial situation, we note that the

court below made the following explanation:

> Ladies and gentlemen of the Jury, I feel constrained to make a statement to you. As you will recall on yesterday when this witness was placed on the stand, he exercised his constitutional right under the Fifth Amendment and declined to answer questions. Pursuant to a statute, adopted by the Congress of the United States, the United States Attorney is authorized, upon approval provided by law, to request that a witness be granted immunity from prosecution arising directly or indirectly from answers that he gives after exercising his rights under the Fifth Amendment.

> Such a petition was filed yesterday out of the presence of the Jury. The Court considered the petition before this court and granted the petition.

> At the request of counsel for the defendants at that time, after conferring together, the court agreed to make no statement to the Jury about the matter at their request, and the court did not at that time for that reason.

> The court did state to counsel at that time, however, that if they made reference to it in cross examination the court would make this statement to the Jury, which I have just done.

This explanation was made only after the trial court had indicated to counsel, outside the presence of the jury, that such a statement would be made if the issue of immunity was raised on cross-examination, which it eventually was. We fail to conclude, on the basis of our review of the record herein, that the court's comments to the jury in regard to Koen imparted the slightest indication to the jury that the court was somehow giving its approval to or enhancing the credibility of Koen's testimony. Nor are we convinced that said comments gave the jury the impression that the court was playing the role of an advocate for the prosecution. In any event, if, by some stretch of the imagination, the conclusion could be drawn that the trial court's comments were in any way inappropriate, any significance that may have been attached thereto was dissipated in light of the court's instructions on the care to be exercised by the jury in weighing accomplice and informer testimony and, additionally, the court's final instructions to the jury that "if during the trial, the Court has intimated any opinion as to the facts, the jury is not bound by that opinion."

Likewise, as to certain remarks regarding immunity which were made by the United States Attorney in rebuttal argument, we find that those remarks amounted to nothing more than fair comment upon, and a response to, a matter which counsel for appellants had raised on several occasions in closing argument. Accordingly, based on the circumstances of the instant case, appellants' position herein as to the impropriety of the statements made by the prosecutor in response to their own closing argument indeed, in our opinion, is virtually devoid of merit.

Finally, we address ourselves to appellants' claim that the district court unduly restricted the cross-examination of Joel Koen as to his immunity and other matters pertaining to his credibility. In this regard, we need only say that the trial court did not, in its sound discretion, violate or unduly interfere with appellants' right to conduct a full and reasonable cross-examination as to the subjects brought out on direct examination. *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931). One need only refer to the transcript herein which recounts the length and content of the cross-examination of Koen to realize that appellants were in no significant way curtailed in their examination of Koen or any other witness in the case.

## V—REMAINING ISSUES

The remaining issues which have been raised by appellants in this appeal, and which have not been discussed up to this point, include the following: (1) the admission of hearsay evidence and the

court's instruction to the jury regarding its use; (2) the court's supervision of peremptory challenges; (3) the court's supervision of the voir dire examination; (4) the court's admission into evidence of certain exhibits, particularly government's Exhibits 2A–26A and a map contained in government's Exhibit 1D; (5) the trial judge's demeanor in conducting the trial, and his attitude toward counsel; (6) the trial court's instruction to the jury as to separate verdicts and the forms of verdicts used by the jury; and (7) the trial court's sentencing of defendants.

We have scrutinized the above issues and the law applicable thereto with the utmost care and diligence. Nevertheless, having done so, we are of the firm conviction that none of them, in the context of the circumstances and facts of the instant case, is substantial enough to require this Court to embark upon an exhaustive analysis thereof. Accordingly, in the interests of reason and judicial economy, yet not at the expense of a just determination of this appeal, it is the considered judgment of this panel that we need not at this time make separate determinations as to each and every issue alluded to above. In short, we decline to expand this opinion any further with a discussion of matters which we feel would result in mere surplusage.

The judgments of conviction in the district court are now and hereby affirmed.