**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Hilda LOMAN and Larry Loman, Defendants-Appellants.**

**Nos. 76–1965, 76–1966.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 8, 1977.

Decided March 15, 1977.

See 97 S.Ct. 2982.

Kenneth L. Cunniff, Richard F. Walsh, Federal Defender Program, Chicago, Ill., for defendants-appellants.

Samuel K. Skinner, U. S. Atty., John E. Burns, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before BAUER and WOOD, Circuit Judges, and SHARP *, District Judge.

ALLEN SHARP, District Judge.

The appellants, Hilda Loman and Larry Loman were indicted for assaulting a mail carrier with dangerous weapons in violation of Title 18, United States Code, Section 111. Count I of the indictment alleged that Larry Loman, by means of a dangerous weapon, a hand gun, assaulted a United States postal carrier, Mattie Dright, while she was engaged in the performance of her official duties. Count II charged that Hilda Loman assaulted the same person with a dangerous weapon, a walking stick, while Ms. Dright was performing her official duties. As a result of a trial by jury both Lomans were convicted and subsequently sentenced from which they now appeal.

The evidence discloses that on Saturday, August 17, 1974, Mattie Dright was delivering mail in the vicinity of 64th and Stewart Streets in Chicago, Illinois, when she was approached by Larry Loman who was then carrying a black stick. Stating that he lived at 6463 Stewart Street he asked Mattie Dright about his mail. Mattie Dright had never seen Larry Loman before and informed him that he would have to wait until she got to his house. He then walked back toward 6463 Stewart Street.

A short time later Hilda Loman, also unknown to Mattie Dright, approached Ms. Dright as she was delivering mail on Stewart Street and requested her mail. Ms. Dright informed Hilda Loman that she would have to wait until she arrived at the Lomans' address. As Ms. Dright continued to deliver the mail Hilda Loman followed her nagging her about the mail and threatening her with obscene language. As a result Ms. Dright stopped at a nearby store and called the Post Office to report the harassment and to request help. When Ms. Dright left the store and continued to deliver the mail, both Lomans once again approached her and threatened to take the mail away from her if she would not cooperate with them. Because of this continued harassment Ms. Dright again called the Post Office and the police seeking help.

Within a short time a Chicago police officer responded to the call. The Lomans informed the police officer that Ms. Dright was withholding their aid check. Ms. Dright advised the officer that she did not have the aid check. As a result the police officer informed both Lomans that Ms. Dright did not have the check and that she was not permitted by postal regulations to

* The Honorable Allen Sharp, United States District Court for the Northern District of Indiana, is sitting by designation.

deliver the check on the street and as soon as Ms. Dright had the check she would deliver it to the house.

The Lomans did not leave promptly as requested by the police officer but made some additional remarks to Ms. Dright. After further request by the police officer the Lomans departed from the scene. As soon as the police officer had left Hilda Loman returned and again harassed Ms. Dright and threatened to take the mail. As a result Ms. Dright took refuge in a liquor store and later returned to the Post Office.

Upon returning to the Post Office Ms. Dright looked in the removal book and found that the Lomans had moved. According to the United States Postal Service regulations welfare checks may not be forwarded whenever the addressee has moved but rather must be marked "undeliverable" before the carrier goes on his route and then returned to the agency office. Failure to comply with these regulations subjects a carrier to disciplinary action.

The same afternoon, after their encounter with Ms. Dright, the Lomans went to the Englewood Post Office and complained to the carrier foreman about Ms. Dright. The carrier foreman told the Lomans that no aid checks were in the mail that day. Larry Loman warned the carrier foreman that the young people in the neighborhood would not tolerate Ms. Dright's attitude and that she would get hurt.

On Monday, August 19, 1974, Ms. Dright was delivering mail near 355 West 65th Street when she was again confronted by the Lomans demanding their check. Hilda Loman was then carrying Larry Loman's walking stick. Ms. Dright told the Lomans that she did not have the check. The check had arrived at the Post Office that morning, and pursuant to postal regulations, Ms. Dright had sent back the check. The Lomans followed Ms. Dright to a nearby relay box continuing to harass her. On arriving at the relay box, the Lomans blocked the box and Hilda Loman began hitting Ms. Dright on the shoulder and jaw with the walking stick. After being struck at least twice by Hilda Loman, Ms. Dright retrieved a can of mace and sprayed it at Hilda Loman. When Ms. Dright sprayed the mace can, Larry Loman, standing nearby, fired two shots at her with a small caliber gun and fled from the scene. Because of the injuries sustained, Ms. Dright was unable to return to her official duties as a mail carrier for about two weeks.

The sufficiency of evidence to sustain the convictions of both Lomans is not here challenged. Four issues are presented for review and determination here. They are:

I. Whether the district court abused its discretion in refusing to allow the Lomans to use Ms. Dright's postal file for impeachment purposes or for proof of a violent character.

II. Whether the district court erred in giving its instruction defining reasonable doubt.

III. Whether the district court's instruction on self-defense was erroneous.

IV. Whether the district court erred in characterizing the walking stick as used by Hilda Loman as a "dangerous weapon".

I

At the trial Hilda Loman testified that Ms. Dright hit her and was reaching for a can of mace when she hit Ms. Dright with the walking stick in self-defense. Accordingly, for purposes of cross-examination the Lomans moved for production of Ms. Dright's postal file, which included some complaints against her as a mail carrier. The district court conducted an *in camera* inspection of the entire file and determined that the information in the file was irrelevant to the case but turned over the material to the Lomans for the purpose of making an offer of proof.

In this regard the district court complied with the mandate of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) as most recently renewed in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

## II

■ Over objection the district court gave the following instruction defining reasonable doubt:

"A reasonable doubt is what the term implies—a doubt founded on reason. It does not mean a doubt that may be purely speculative. It means simply an honest doubt that appeals to reason and is based upon reason. If, after considering all the evidence in this case you have such doubt in your mind as would cause you, or any other reasonably prudent person to pause or hesitate before acting in a grave transaction of your own life, then you have the kind of doubt the law regards as a reasonable doubt."

This instruction is challenged primarily on the basis of a line of cases in which instructions equating "reasonable doubt" with "substantial doubt" are questioned. See *United States v. Emalfarb*, 484 F.2d 487 (7th Cir. 1973); *United States v. Bridges*, 499 F.2d 179 (7th Cir. 1974); *United States v. Lawson*, 507 F.2d 433 (7th Cir. 1974); *United States v. Shaffner*, 524 F.2d 1021 (7th Cir. 1975); *United States v. Gratton*, 525 F.2d 1161 (7th Cir. 1975); *United States v. Crouch*, 528 F.2d 625 (7th Cir. 1976), and *United States v. Wright*, 542 F.2d 975 (7th Cir. 1976).

The message to all district judges is that great difficulty inheres in the process of defining reasonable doubt. One judge of this Court described the process as "playing with fire". See *United States v. Shaffner, supra*, at page 1023. However, this Court has never held and it does not now hold that giving instructions defining reasonable doubt per se constitutes reversible error. Such option remains with the district judge as mentioned in *United States v. Lawson*, 507 F.2d 433 (7th Cir. 1974), cert. den. 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 762 (1975). When the above instruction is considered along with the total charge to the jury we cannot and do not say that reversible error was committed. Although a good deal of semantics is involved in this entire line of cases, there is substantially less prejudice to a defendant in this instruction than

in those instructions equating substantial doubt with reasonable doubt.

We are well aware of the warning issued in *Wright* at p. 987:

"We also observe, however, that the message to the district courts of this circuit having been stated in *Crouch* in January 1976, and having been repeated here, should now be clear and that a district court giving a reasonable doubt instruction containing the challenged equation notwithstanding a Rule 30 challenge can reasonably expect a reversal. We would assume further that district courts in view of the expressed dissatisfaction by this court with the language would *sua sponte* eliminate the phrase from their set of standard instructions even in the absence of a Rule 30 objection."

Although the question may be a close one the instruction given in this case does not fall within the ambit of that warning.

This Court is certainly not here intending to encourage or suggest the use of this instruction. We are simply holding that the giving of this instruction does not constitute reversible error.

## III

Over objection the district judge gave the following instruction on self-defense:

"The defendant Hilda Loman has raised the defense of self defense. She has no burden of proof to sustain as to this defense. If her evidence, considered with all the other evidence, raises a reasonable doubt as to her guilt, she is entitled to acquittal.

In defining one's self against an unlawful attack, a person is only justified in using such an amount of force as may appear to him at the time necessary to accomplish that purpose. If he uses a kind of force in excess, or out of proportion to what may be necessary to his own defense, as it honestly appeared to him at that time, he himself is guilty of an assault."

■ As indicated above this Court has determined that this jury in this case was fairly instructed as a whole. See *U. S. v.*

*Pike*, 158 F.2d 46 (7th Cir. 1946). This Court has also recognized that large discretion rests in the district judge regarding the particular language of an instruction. See *United States v. Rajewski*, 526 F.2d 149 (7th Cir. 1975). An instruction may be proper if it adequately states the law and need not be given in any particular form or in any exact language requested. See *United States v. Martin*, 507 F.2d 428 (7th Cir. 1974), *United States v. Bessesen*, 445 F.2d 463 (7th Cir. 1971), cert. den. 404 U.S. 984, 92 S.Ct. 448, 30 L.Ed.2d 368 (1971), and *Williams v. United States*, 403 F.2d 176, 131 U.S.App.D.C. 153 (1968).

Here the instruction given by the district court clearly advised the jury that one who is attacked may use force to defend himself. In *United States v. Esquer*, 459 F.2d 431 (7th Cir. 1972), cert. den. 414 U.S. 1006, 94 S.Ct. 366, 38 L.Ed.2d 243 (1973).

■ This Court reviewed a claimed failure of the district court to give a self-defense instruction. While finding no prejudicial error, this Court suggested that an instruction given, relating primarily to the duty of retreat, contains specific reference to the issue of self-defense and therefore was a sufficient self-defense charge because it adequately informed the jury that one who is attacked has the right to use force to defend himself. The instruction given in this case also advised the jury that there was a limit on the amount of force one might use in self-defense and that a person may not use unbridled force in self-defense. See *Inge v. United States*, 123 U.S.App.D.C. 6, 356 F.2d 345 (1966).

The district court's instruction also informed the jury that Hilda Loman had a right to defend herself against any unlawful attack but that if she acted in self-defense, excessive force was not permissible. This instruction adequately apprised the jury of the law of self-defense.

■ Hilda Loman further contends that the district court erred in failing to instruct the jury that the law imposes no duty on a person to retreat before acting in self-defense. No cases are cited by her to support the correctness of such instruction but she cites only general self-defense instructions. In *Brown v. United States*, 256 U.S. 335, 41 S.Ct. 501, 65 L.Ed. 961 (1921), at page 343, 41 S.Ct. at page 502, the Supreme Court stated: "Rationally the failure to retreat is a circumstance to be considered with all the others in order to determine whether the defendant went farther than he was justified in doing . . . ." The issue for jury consideration is whether a defendant uses excessive force in self-defense. The so-called doctrine of the duty of retreat is a means of triggering jury attention to the amount of force employed by a defendant. While the district court may not have instructed the jury explicitly using the words "duty to retreat", that court did charge the jury that the possible use of excessive force by a defendant might be considered in evaluating any claim of self-defense. Certainly, there is no prejudice to Hilda Loman in this regard.

■ Hilda Loman engages in further semantical warfare on this instruction in challenging the words "honestly appeared" in the second paragraph of it. The use of the term honest is considered in *United States v. Hardin*, 143 U.S.App.D.C. 320, 443 F.2d 735 (1970), and is certainly not reversible error.

■ On the subject of the self-defense instruction Hilda Loman finally argues that the jury should have been advised that she had the right to strike the first blow if it reasonably appeared necessary to her in order to protect herself. To support this argument she cites *Rowe v. United States*, 164 U.S. 546, 17 S.Ct. 172, 41 L.Ed. 547 (1896). *Rowe* is certainly not authority for this theory and certainly does not stand for the proposition that it is reversible error to inform the jury that a defendant claiming self-defense has some right to strike the first blow.

A fair reading of this entire instruction on self-defense fails to indicate that the same constitutes reversible error on any of the bases argued by Hilda Loman.

## IV

 Hilda Loman argues that the walking stick used in this case is not a dangerous weapon as alleged in the indictment.

In *United States v. Johnson*, 324 F.2d 264 (4th Cir. 1963), the court, at page 266, stated:

"The main legal contention is that a chair is not a dangerous weapon. While it may not be a dangerous weapon per se, 4 Am.Jur. Assault and Battery § 34, p. 145,—almost any object 'which as used or attempted to be used may endanger life or inflict great bodily harm.' *United States v. Anderson*, 190 F.Supp. 589, 591 (D.Md.1960), or which, as it is sometimes expressed, 'is likely to produce death or great bodily harm,' *Tatum v. United States*, 71 App.D.C. 393, 110 F.2d 555, 556 (1940), can in certain circumstances be a dangerous weapon. Illustrating this principle, courts have held that a wine bottle can be a dangerous weapon, *Thornton v. United States*, 106 U.S.App.D.C. 7, 268 F.2d 583 (1959); shoes can be dangerous weapons, *Medlin v. United States*, 93 U.S.App.D.C. 64, 207 F.2d 33 (1953); a rake can be a dangerous weapon, *Eagleston v. United States*, 172 F.2d 194 (9th Cir. 1949); a thrown club can be a dangerous weapon, *United States v. Anderson*, 190 F.Supp. 589 (D.Md.1961); a brick can be a dangerous weapon, *State v. Perry*, 226 N.C. 530, 39 S.E.2d 460 (1946); and a chair leg can be a dangerous weapon, *Wisniewski v. State*, 51 Del. 84, 138 A.2d 333 (1957). Not the object's latent capability alone, but that, coupled with the manner of its use, is determinative. The chair in the instant case was metal and plastic. It was wielded from an upright (overhead) position and brought down upon the victim's head. Fortuitously, the wound inflicted was not serious, but had the blow fallen an inch lower it could have endangered Cassidy's eye, or if slightly higher, a dangerous head wound was likely. Evidence of such use of a chair is sufficient to support its characterization by the District Court as a dangerous weapon."

See also, *McGill v. United States*, 106 U.S. App.D.C. 136, 270 F.2d 329 (1959), cert. den. 362 U.S. 905, 80 S.Ct. 615, 4 L.Ed.2d 555 (1960).

In this case, Hilda Loman struck Ms. Dright twice with the walking stick, once on the back and once on the jaw with such force that it broke.

Ms. Dright was very lucky that the stick did not hit her in the eye or on the forehead causing serious injury. The walking stick as used by Hilda Loman could easily have caused grave bodily injury to Ms. Dright and the fortuitous fact that Mrs. Dright was not injured did not make Hilda Loman's action any less an assault with a dangerous weapon. The district court properly characterized the walking stick as used by Hilda Loman as a "dangerous weapon".

Having carefully considered all of the assertions of error raised by the Lomans and finding no reversible error in any of them, the convictions of both are now affirmed.

Affirmed.