UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert Fulton BEASLEY, Jr., et al.,
Defendants-Appellants.

Nos. 73–1190—73–1194.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Sept. 10, 1973.

Rehearing Denied Oct. 24, 1973.

Floy E. Dawson, Asst. U. S. Atty. (William R. Burkett, U. S. Atty., on the brief) for plaintiff-appellee.

K. Nicholas Wilson, Oklahoma City, Okl., for defendants-appellants Beasley, Gentry, Jones and Bates.

I. H. Kaiser, Denver, Colo., for defendant-appellant Green.

Before CLARK,* Associate Justice, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is a heroin prosecution in which the several defendants were charged with conspiracy to violate 21 U.S.C. § 174 prohibiting the transportation, concealment and sale of narcotic drugs.[1] The cause is before this court for the second time. Our first consideration of it resulted in a reversal based on the fact that the thirteenth juror had not been removed prior to retirement of the jury and was thus present during preliminary deliberation. United States v. Beasley, 464 F.2d 468 (10th Cir. 1972). The main issue on this appeal, namely, validity of the arrest warrant, was presented in the prior case but was not considered. The cause was retried in November 1972 and again the case resulted in conviction.

The arrest of Beasley, Gentry, Green and Bates took place December 11, 1970. That of Jones occurred on January 13, 1971. The complaint presented by a federal narcotics agent, one Kelly Don McCullough, is the area which is primarily the embattled one. This complaint sets forth 25 overt acts evidencing the conspiracy. However, 23 of the 25 acts described conduct of persons other than the defendants.[2]

Annie Vel Britt's testimony showed that she arrived in Oklahoma City shortly before the arrest in November 1970 and took up residence in the Canton Hotel where her arrest occurred. She met defendant Ernest Eugene Bates at the Canton Hotel. She added that she couldn't remember how she met Bates— "like we was all living in the same hotel together." She further testified that she and Bates sold heroin for Beasley.

Another significant item of evidence was a black briefcase which was found in Beasley's hotel room by the landlord, a Dr. Youngblood. This brief case contained numerous capsules of heroin together with a quantity of aluminum foil which had Beasley's fingerprints on it.

The witness Britt testified at some length concerning her relationships with the other defendants including the sale of heroin. She described particularly delivery of some capsules of heroin by Gentry for the purpose of sale and also described the sale of these capsules at the Canton Hotel where she was living. She also testified that her selling activities were primarily for the benefit of defendant Beasley. In each instance when she was furnished heroin she sold a quantity of it and was permitted to retain a quantity for her own use. At the time of the arrest of defendant Bates the witness Britt was with him in his room at the Canton Hotel.

It is not easy from a careful scrutiny of the record to ascertain the exact circumstances of the several arrests. It would appear, however, that Annie Vel Britt and the defendant Bates were arrested as indicated above in Bates' room at the Canton Hotel. Beasley was arrested at the Youngblood Apartments. It appears that Beasley had an apartment in that building and also a room in the adjacent distinct building, the

---

* Associate Justice, United States Supreme Court, Retired, sitting by designation.

1. 21 U.S.C. § 174 was repealed by Pub.L. 91–513, 84 Stat. 1291, Title III, § 1101(a)(2)(4), October 27, 1970. However, defendants' arrest and alleged violation of the statute preceded the effective date of its repeal, so that 21 U.S.C. § 174 is still applicable in this case.

2. The complaint alleged that 29 persons were participants in the conspiracy to violate 21 U.S.C. § 174. Two indictments were returned. One involved the defendants in this case. The other led to a separate prosecution of the other co-conspirators in United States v. Edward Lee Thomas, et al., No. CR–71–55 in the U. S. District Court for the Western District of Oklahoma.

Youngblood Hotel. The briefcase had been in his hotel room in the Youngblood Hotel and Dr. Youngblood produced it from there. Presumably the other defendants were arrested in the vicinity of the Canton Hotel, although this is not clear from the record.

We are given to understand that all of these people were arrested as part of the same transaction and at about the same time. The source of all this information is McCullough, the narcotics agent.

As mentioned above, we are called upon to determine, first, the sufficiency of the complaint upon which the arrest warrant was based and, secondly, whether the briefcase containing heroin which Dr. Youngblood found in the hotel room of Beasley was rendered inadmissible as a result of the arrest and, finally, whether the testimony of Annie Vel Britt was inadmissible as having been the product of an illegal arrest.

## I.

■ We conclude that the complaint was indeed deficient. It was nothing more than allegations containing conclusions of fact which described the offense. There was a general verification signed by Kelly Don McCullough, but it made no reference to the source of the information, that is, whether it was based on personal knowledge or was derived from informants who were reliable or showed the basis for their reliability.

The Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964) ruled that the complaint must not only set forth facts establishing the commission of an offense under federal law, it must also present facts evidencing probable cause to authorize the issuance of a warrant. Following this the Supreme Court held in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) that where a complaint or affidavit is not shown to be based on personal observation of the complainant or affiant, the magistrate

must first be informed of some of the underlying circumstances on which the informant has based his conclusions and on which the affiant has determined that the informant was credible and his information reliable. If the magistrate doubts the reliability of the informant, he is obligated to consider whether there is corroborating evidence. The inquiry is whether the tip, even when parts of it have been corroborated by independent sources, is as trustworthy as a tip which satisfies the *Aguilar* case without independent corroboration. These cases contemplate that there will be either an explanation of the method of gathering the information or else the tip must describe the accused's criminal activity in a manner which will furnish an inference or conclusion that the complainant has a substantial basis for his action and is not relying on rumor. The complaint in *Spinelli* was held inadequate because of the failure to furnish an explanation.

The Supreme Court followed the *Spinelli-Aguilar* pattern in Whitely v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1972). There again it was reiterated that the complaint based on an informant's tip containing conclusions as to the defendant's unlawful act was insufficient.

In the earlier case of Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), the arresting officer had supplementary information which he presented to the magistrate. In our case there was no such supplementary information and in such a situation this provides no help to the magistrate and does not bolster the insufficient complaint. *See* Whitely v. Warden, *supra.*

■ Conversely, when the affidavit provides a detailed description of the defendant's alleged illicit activity and when the details are in part corroborated by independent information disclosed to the magistrate, a reasonable basis exists for the magistrate to make

a finding of probable cause. United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); United States v. Holliday, 474 F.2d 320 (10th Cir. 1973); Leeper v. United States, 446. F.2d 281 (10th Cir. 1971). The context in which this issue arises generally is that of a search warrant. However, the Supreme Court has made clear that the arrest warrant is subject to the same careful scrutiny and has to pass the muster of the Fourth Amendment. *See* Giordenello v. United States, 357 U.S. 480, 485–486, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

The complaint which is here presented is palpably inadequate and invalid in that it sets forth neither the evidence nor the source of any information which the agent had. Moreover, the allegations are not such that the evidentiary facts can be gleaned from them. Thus, it does not even satisfy formal requirements nor does it appear from the record that supporting or supplemental information was offered to the magistrate.

As noted above, there was no corroborating evidence presented either within the four corners of the complaint or orally. Therefore, neither Rules 3 or 4 of the Federal Rules of Criminal Procedure nor the Fourth Amendment were satisfied.

## II.

As a result of the ruling which we have given above, we now consider the further argument of the defendants that the evidence of Britt and the mentioned briefcase were tainted as a result of the arrest pursuant to a faulty warrant.

■ First, we consider the testimony of Britt. We note at the outset that since Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914),

the sanction for obtaining evidence in violation of the Constitution is exclusion and under present law it is immaterial whether the evidence is tangible (demonstrative) or testimonial. If it comes to light incident to an unconstitutional invasion and its use is an exploitation of that illegality, its use must be prohibited. We must consider then whether the illegal arrest in the case at bar tainted the questioned evidence, whereby it can be regarded as fruits of the illegal arrest.

Defendants rely on the famous case of Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), wherein testimony or statements were first equated to tangible evidence in terms of being regarded as "fruits of the poisonous tree." Involved first was a statement made by one Toy incident to an illegal arrest.[3] The statement of Toy led to the arrest of one Yee and the seizure from him of heroin. Neither the heroin nor Toy's statement could be used against him, so it was ruled, since both items of evidence stemmed from and were the product of the illegal arrest of Toy. The words of Justice Brennan explain the essential nexus as follows:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.[4]

371 U.S. at 487–488, 83 S.Ct. at 417.

■ The *Wong Sun* facts are complicated and the unusual names of the ac-

---

3. Information having been obtained from one Hom Way who was not shown to have been reliable resulted in Toy's arrest lacking probable cause.

4. Justice Brennan's formula was a paraphrase of language of Justice Holmes in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182 at 183 (1920).

tors make it difficult to identify the parties. Because of this we have appended a columnar summary of the case to simplify the presentation of its scope and extent, whereby the mysteries resulting from its complicated facts will not be exploited. Thus, the crucial test is exploitation of illegality. Based on that test our case is not governed by *Wong Sun*. Although the witness Britt was arrested on the same occasion as the defendant Bates, it does not follow axiomatically that her testimony at trial is thereby tainted. Indeed, the evidence she furnished being witness testimony seems on its face to differentiate it from drugs, for example, or even confessions or admissions. However, we do not follow this categorical test, for there may be circumstances in which testimony could be exploited and tainted and some decisions have recognized this. *See* United States v. Hoffman, 385 F.2d 501, 504 (7th Cir. 1967), which is closely analogous to this one. The court there ruled in essence that the testimony of the accessory was separate from the illegal arrest in fact and in law. Indeed, ordinarily when the testimony of an accessory is used there would often exist grounds for ruling that the giving of the testimony results from the accessory's desire to help himself or herself. Thus, the exercise of human volition intervenes and it is not the product of the unlawful arrest. Brown v. United

States, 126 U.S.App.D.C. 134, 375 F.2d 310 (1966); United States v. Evans, 454 F.2d 813 (8th Cir. 1972). *See also,* United States v. Fallon, 457 F.2d 15 (10th Cir. 1972), wherein we pointed out that the "but for" test of causation is not the governing one. *Wong Sun* recognized this.[5] This reasoning is in line with other Supreme Court decisions. Thus, in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), it was recognized that evidence can be purged of the primary taint where the knowledge of the incriminating facts had been obtained from "an independent source" and also where the connection has become "so attenuated as to dissipate the taint." Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939).

In our case Britt was an accessory, and although she was caught in the net which also caught Bates,[6] there was apparently an independent basis for arresting her. She was first charged with prostitution and some three days afterward was charged with the instant offense. Her decision to testify came some three days after the arrest, and this time separation, together with the other circumstances, creates a high degree of probability that she exercised her own volition which leads us to conclude that there was no exploitation of the illegal arrest.[7]

---

5. In *Fallon* we said:
   In the present case the succession of events which led to the giving of incriminating admissions by the defendant was unlike the statement in *Wong Sun* which was part of the breaking and entering. Here the statements were independent of the arrest and remote (from the original stop and check). To be sure, the admissions would not have been obtained had the defendant not been stopped and detained. However, we do not read the *Wong Sun* case as holding that a "but for" factual connection is legally sufficient. The admissions were not products of and did not flow from the circumstances of the arrest.
   457 F.2d at 19-20.

6. The defendants other than Bates lack standing to even raise this taint issue. Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); United States v. Galvez, 465 F.2d 681 (10th Cir. 1972).

7. *See* Carpenter v. United States, 463 F.2d 397 (10th Cir. 1972); United States v. Tyler, 459 F.2d 647 (10th Cir. 1972); United States v. Fallon, 457 F.2d 15 (10th Cir. 1972); United States v. Holsey, 437 F.2d 250 (10th Cir. 1970); Green v. United States, 386 F.2d 953 (10th Cir. 1967). *See also* United States v. Kennedy, 457 F.2d 63 (10th Cir. 1972).

### III.

The briefcase furnished by Beasley's landlord, Dr. Youngblood, was clearly admissible.[8] Defendants maintain that Dr. Youngblood's discovery of the briefcase was incident to the illegal arrest. The government argues that Youngblood entered Beasley's room to clean it and make sure it was in proper order for the next guest. Youngblood testified that while cleaning he found the briefcase in a bureau drawer. He did not even open the briefcase but forthwith delivered it to the officers.

▰ Evidence obtained by a private individual is not the product of a government search and is not subject to exclusion under the Fourth Amendment. *See* Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). A discovery similar to that here present existed in Duran v. United States, 413 F.2d 596, 608 (9th Cir. 1969). There heroin was discovered by a landlady while cleaning the defendant's room. The court recognized that this was a "private search" and said:

Mrs. Wise entered the room for her own purposes; to clean it and prepare it for the next occupant. She was not asked by the police officers to inspect or search the room, and there was no police participation of any kind in the search or the discovery.

413 F.2d at 608.

The Youngblood discovery is exactly the same and, therefore, there is not any taint. Accordingly, we need not even consider whether there are circumstances which resulted in a purge.

In sum then Britt's testimony was admissible because it was legally remote from the illegal arrest and proceeded on an independent basis. The briefcase was privately discovered and was not illegally obtained.

We have examined the other points raised and we are of the opinion that they are all lacking in merit.

The judgment of the district court is affirmed.

### APPENDIX

### A DIAGRAM OF THE ESSENTIAL FACTS AND LAW IN WONG SUN V. UNITED STATES

| PARTY INVOLVED | EVIDENCE PROCURED | SUPREME COURT RULINGS |
|---|---|---|
| 1. *Hom Way*: Arrested by federal agents on June 4, 1959 at 2:00 A.M. | A. Heroin found in Hom Way's possession. | A. Not admissible against Toy. |
| | B. Statement that heroin bought from "Blackie Toy." | B. Insufficient to establish probable cause to arrest Toy. |
| 2. *James Wah Toy*: Arrested by federal agents on June 4, 1959 at 6:00 A.M. | | 2. Arrest illegal for lack of probable cause. (Hom Way held not a reliable informant). |
| | C. Toy's flight from officers. | C. Flight—insufficient inference of guilt to establish probable cause. |

8. Dr. Youngblood owned both an apartment building and a hotel, which were adjacent to each other and separated by a fire wall. Defendant Robert Beasley was renting both an apartment and a hotel room when the arrest occurred. The arrest took place in Beasley's apartment, but Dr. Youngblood found the briefcase in Beasley's hotel room.

APPENDIX—Con't

A DIAGRAM OF THE ESSENTIAL FACTS AND
LAW IN WONG SUN V. UNITED STATES—Con't

| PARTY INVOLVED | EVIDENCE PROCURED | SUPREME COURT RULINGS |
|---|---|---|
| | D. Toy's statement inculpating "Johnny" (Johnny Yee) and himself. | D. Inadmissible as "fruit" of Toy's illegal arrest. |
| 3. *Johnny Yee*: Arrested by federal agents on June 4, 1959 at about 7:00 A.M. | E. Ounce of heroin surrendered by Yee; Yee's assertion that heroin brought to him by Toy and "Sea Dog." | E. Inadmissible only as against Toy as "fruit of the poisonous tree" (procured by exploitation of Toy's illegal arrest). Admissible as against Wong Sun. |
| | F. Toy's disclosure of "Sea Dog's" identity as Wong Sun. | F. Insufficient to establish probable cause for arresting Wong Sun. |
| 4. *Wong Sun:* Arrested by federal agents on June 4, 1959 at about 9:00 or 10:00 A.M. | | 4. Arrest illegal for lack of probable cause. |
| 5. *James Toy, Johnny Yee* and *Wong Sun*: Interrogated by federal agents on about June 9, 1959. | G. Incriminating statements and confessions obtained. | 5. Proper warnings given.<br><br>G. No ruling on whether Toy's confession was fruit of his illegal arrest. Wong Sun's voluntary confession considered sufficiently removed from his own illegal arrest to "dissipate the taint." |

———◆———

*In Summation:*

1) Statement of Hom Way ruled inadmissible as insufficient to furnish probable cause for the subsequent arrest of Toy.

2) Statement of James Toy ruled inadmissible as "fruit" of Toy's illegal arrest.

3) Heroin obtained from Johnny Yee ruled inadmissible only as against Toy as "fruit" of Toy's illegal arrest.