**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gerrold E. STEVENS, Defendant-Appellant.**

**No. 77–1937.**

United States Court of Appeals, Tenth Circuit.

Argued Jan. 25, 1979.

Decided Nov. 15, 1979.

Rehearing Denied Feb. 27, 1980.

John C. Humpage, Topeka, Kan., for defendant-appellant.

Roger M. Theis, Asst. U. S. Atty., Topeka, Kan. (James P. Buchele, U. S. Atty. and Bruce E. Miller, Asst. U. S. Atty., Topeka, Kan., with him on briefs), for plaintiff-appellee.

Before SETH, Chief Judge, HOLLOWAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Appellant Gerrold E. Stevens was convicted by a jury on charges of conspiracy to distribute heroin, a controlled substance, and interstate travel to promote a conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), 846 and 18 U.S.C. § 1952.

On appeal numerous errors are asserted—1) testimony of coconspirator William Deal was tainted by an illegal wiretap and should not have been admitted; 2) the indictment should have been dismissed for failure to charge a public offense; 3) the prosecution failed to prove a travel act violation; 4) the content of the indictment varied from the proof offered at trial on the travel act count; and 5) the sentences imposed were illegal because the counts and proof showed a single conspiracy.

Evidence admitted at trial showed that Deal, a parolee, moved to Kansas City, Kansas, in May 1974 and shortly thereafter started supporting a heroin habit by shoplifting. Stevens ran a retail store in that city which also served as a front for a fencing operation. Deal disposed of his shoplifted goods through Stevens. He also aided Stevens in the pick-up and delivery of stolen property from other shoplifters.

In 1976 Deal began acquiring heroin for resale in Kansas City from George Childress, who lived in Los Angeles. Deal made numerous trips to Los Angeles to obtain heroin from Childress and later began to receive shipments from Childress through couriers whom he would meet at the Kansas City airport. About November 1976 Deal became an equal partner with Stevens in his store operation. Soon thereafter the arrangement was revised to include an equal partnership in the fencing operation and in Deal's heroin sales. Stevens then became aware of Deal's arrangement with Childress, including the price and amounts of heroin obtained from him.

In late December 1976, Stevens, Deal, and two female friends left for Las Vegas, paying for the trip with profits from their business. There were two purposes for the trip—a vacation and a meeting with Childress to discuss a possible $250,000 heroin buy. Childress did not show up in Las Vegas, but was called at his home in Los Angeles by Deal while he and Stevens were in Las Vegas. A few days after Deal and Stevens returned to Kansas City, Deal was arrested at Kansas City International Airport immediately after taking possession of ten ounces of heroin from a Childress courier. Stevens and six others were subsequently arrested on related charges.

I

The events culminating in Stevens' indictment began as part of a Drug Enforcement Administration (DEA) investigation in cooperation with local law enforcement agencies in the Kansas City area. According to the record, DEA agent John Hinkle, Overland Park police, and Kansas Bureau of Investigation agents had information from several different informants and undercover agents that Deal was involved in local heroin traffic. Police agents had made heroin buys from at least one person who claimed his supplier was obtaining heroin from Deal, and an informer had claimed

to be present when Deal sold heroin. But because Deal would not sell directly to persons he did not know, police authorities believed they did not have sufficient evidence to indict Deal.

Thereafter, wiretaps on three telephones, including those of Deal and the business operated by Stevens, authorized by a state district judge, resulted in information leading to Deal's arrest. These wiretaps were found to be illegal by the federal trial judge in this case. Initially Deal refused to cooperate with the prosecution. But after consultation with his attorney and a plea bargain had been agreed upon, and more than a month following his arrest, Deal made statements implicating Stevens and others. Under the plea bargain the possession of heroin charge against Deal was dropped, he pleaded guilty to the conspiracy charge and was assured of a sentence not longer than five years.

 Ruling upon a pretrial motion to exclude Deal's proposed testimony against Stevens, the court held it was admissible

> on the ground that Deal's identity and his illegal narcotics dealings were known to law enforcement officers prior to the illegal wiretaps and further, and of even greater significance, Deal's statement to law enforcement officers and his decision to plead guilty and to testify against his co-defendants were wholly independent of the illegal wiretaps.

That ruling is challenged on appeal on the ground that Deal's testimony implicating Stevens was "fruit of the poisonous tree." We must therefore determine whether Deal's testimony is sufficiently attenuated from the exploitation of the illegal wiretaps to be purged of taint.

The present case is similar to *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and our decision in *United States v. Beasley*, 485 F.2d 60 (10th Cir. 1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1946, 40 L.Ed.2d 292 (1974). In *Wong Sun* the statement of a person unlawfully arrested who had been released and had returned voluntarily several days later to make the statement, was held to be admissi-

ble. "[T]he connection between the arrest and the statement had 'become so attenuated as to dissipate the taint.'" 371 U.S. at 491, 83 S.Ct. at 419. In *Beasley* an accessory who had been arrested illegally testified against the defendants, apparently from a desire to help herself. This Circuit held the statement could be found to be voluntary and sufficiently attenuated from her illegal arrest.

> Her decision to testify came some three days after the arrest, and this time separation, together with the other circumstances, creates a high degree of probability that she exercised her own volition which leads us to conclude that there was no exploitation of the illegal arrest.

485 F.2d at 64 (footnote omitted).

The circumstances of the present case indicate sufficient voluntariness. To be sure the testimony came as part of a plea bargain, but that does not diminish the volition of coming forward. *See United States v. Hoffman*, 385 F.2d 501 (7th Cir. 1967), *cert. denied*, 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968); *United States v. Beasley*, 485 F.2d 60 (10th Cir. 1973), *cert. denied*, 416 U.S. 941, 94 S.Ct. 1946, 40 L.Ed.2d 292 (1974). *Cf. Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (threatening a defendant with greater punishment if he refuses to plead guilty to a lesser charge does not violate due process); *United States v. Crouch*, 528 F.2d 625 (7th Cir.), *cert. denied*, 429 U.S. 900, 97 S.Ct. 266, 50 L.Ed.2d 184 (1976) (testifying under immunity). Even though the authorities believed they did not have a case sufficient for prosecution at the time of the illegal wiretaps, it is possible they could have developed a good case against Deal independent of the wiretaps, and he could have been well aware of this possibility. A government agent had made a purchase of heroin from James Etter, who testified at trial that Deal was his supply source. Also, it is significant that the witness and some of the information he provided was known through independent sources. *See United States v. Crouch*, 528 F.2d 625 (7th Cir.), *cert. denied*, 429 U.S. 900, 97 S.Ct.

266, 50 L.Ed.2d 184 (1976). Personal testimony from a witness is more likely to be free of the taint of illegality than documents or objects obtained as a result of an unlawful search or interception. *See United States v. Ceccolini*, 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978).

The court in *United States v. Scios*, 191 U.S.App.D.C. 254, 258, 590 F.2d 956, 960 (D.C.Cir.1978) declared that, "for an act of free will to operate as a dissipation of taint, it must occur in circumstances devoid of coercion." *See also United States v. Houltin*, 566 F.2d 1027, 1034 (5th Cir.), *cert. denied*, 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 118 (1978) (J. Wisdom, dissenting). But *Scios* and *Houltin* involved testimony of persons who faced contempt citations if they did not testify. The instant situation is clearly distinguishable. Deal was entitled to raise the defense of the illegality of the wiretaps and the inadmissibility of evidence resulting therefrom in the case against him. But he offered to testify; his statement declared this decision was in part motivated by a desire "to change his lifestyle and stay out of trouble."

We hold the trial court properly admitted the testimony of William Deal.

## II

■ We turn next to the issue whether the indictment should have been dismissed for failure to state a public offense. The crux of Stevens' argument is that the conspiracy charge failed to allege he conspired "willfully and intentionally to distribute heroin," and that the travel act charge did not allege "the purpose of the conspiracy was to knowingly and intentionally distribute heroin." We believe a normal reading of the charges involved in the instant case [1] conveys the understanding that the distribution of heroin in each count, as well as the primary act of conspiring or traveling

with intention to further an unlawful act, had to have been done "willfully and knowingly." Repeating those words twice in a single sentence would be mere surplusage.

■ Generally, every required mental element must be alleged. *See, e. g., Nelson v. United States*, 406 F.2d 1136 (10th Cir. 1969) (alleging defendant *knowingly* conspired to cause altered securities to be transported not sufficient when offense also includes element of *fraudulent intent*); *Robinson v. United States*, 263 F.2d 911 (10th Cir. 1959) (alleging *knowingly* conspired to sell drugs not sufficient when offense also includes element of *known to be imported contrary to law*). When the same mental element is required for each act, however, an initial recital of that element is sufficient.

■ Convictions should not be reversed for minor, technical irregularities that do not prejudice the accused. *Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). *See* Fed.R.Crim.P. 52(a). The travel act charge wording is similar to that approved in *United States v. Levine*, 457 F.2d 1186 (10th Cir. 1972), in which we held it is enough if the count substantially follows the wording of the statute and outlines the elements of the offense and the charges the accused must meet. The indictment here contained a substantially accurate statement of the law and outlined the elements of the offenses charged. We find it adequately warned Stevens of the charges he had to meet.

■ Appellant's argument that no overt act was charged in the travel act count does not impress us. Overt acts are alleged and were proved in connection with the conspiracy count. We do not think it is necessary

---

1. The conspiracy charge alleged Stevens "wilfully and knowingly did combine, conspire, confederate and agree together and with other persons to the grand jurors unnamed or unknown, to distribute heroin, a schedule I controlled substance." The travel act charge alleged he "did knowingly and wilfully travel interstate from Kansas to Las Vegas, Nevada, with the intent to promote a conspiracy to distribute heroin in violation of 21 U.S.C. 846 and thereafter did promote or attempt to promote said unlawful activity, in violation of 18 U.S.C. 1952."

to reallege overt acts with respect to the conspiracy in the travel act count, which fairly meets the standard set forth in *Levine*. *See United States v. King*, 521 F.2d 61 (10th Cir. 1975); *United States v. Levine*, 457 F.2d at 1188 n.1.

We find no fatal defects in the indictment.

### III

Did the prosecution prove a travel act violation? The elements of such a violation under 18 U.S.C. § 1952(a)(3) are as follows: 1) use of facilities of interstate commerce, 2) with intent to promote, manage, establish, carry on or facilitate any unlawful activity, and 3) performance of or an attempt to perform that unlawful act.

There was sufficient evidence to support the verdict on this charge. Deal and Stevens flew from Kansas City to Las Vegas via commercial airline. A reason for the trip was a prearranged meeting with Childress to try to obtain a good price on a large heroin buy. That the trip was for a vacation as well as for purposes of furthering the conspiracy does not preclude conviction. *United States v. Gooding*, 473 F.2d 425 (5th Cir.), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973).

The third element requires for conviction an overt act in furtherance of the conspiracy, performed after the travel. *See United States v. Peskin*, 527 F.2d 71 (7th Cir. 1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976). Childress refused to travel to Las Vegas; both Deal and Childress testified that Deal called him from Las Vegas to induce him to come to that city. The evidence also shows that when this was unsuccessful Deal and Stevens discussed going on to Los Angeles. While the parties did not accomplish a heroin buy in Las Vegas, the telephone calls made by Deal to Childress were overt acts attempting to further the conspiracy within the meaning of the travel act and Stevens is chargeable with those acts. *See, e. g., United States v. Peskin, supra; United States v. Marquez*, 449 F.2d 89 (2d Cir. 1971), *cert. denied*, 405 U.S. 963, 92 S.Ct. 1173, 31 L.Ed.2d 239 (1972); *United States v. Barrow*, 363 F.2d 62 (3d Cir. 1966), *cert. denied*, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967).

### IV

Stevens makes two other arguments in his attack on the conviction, each of which we find lacks merit. We think the proof is sufficient to establish that the interstate travel was from Kansas to Las Vegas, as charged, despite the location of the Kansas City airport in Missouri. Thus, we do not agree there is a fatal variance between the indictment and the proof on this point.

Likewise, we see no merit in the argument that the conspiracy count and the travel act count charge a single crime with respect to which only a single punishment is permissible. "It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Pinkerton v. United States*, 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed.2d 1489 (1946). This rule applies with full force to a conspiracy in the travel act context. *E. g., United States v. McGowan*, 423 F.2d 413 (4th Cir. 1970); *United States v. Polizzi*, 500 F.2d 856 (9th Cir.), *cert. denied*, 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1974).

The judgment is affirmed.