**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 28 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ROBERTO BARRIO, a.k.a. Robert Barrio,
and ELSA BARRIO, a.k.a. Elsa Lopez

      Defendants-Appellants.

Nos. 00-6387, 00-6393
(D.C. No. 00-CR-25-R)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **STAGG**, Senior District Judge.[**]

These two related appeals were separately briefed and separately argued in this Court,

each appellant being represented by his, or her, own counsel. However, both appeals will be

treated in this order and judgment.

Roberto Barrio and Elsa Barrio (husband and wife), and two others, were charged in

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Tom Stagg, Senior District Judge, United States District Court for the Western District of Louisiana, sitting by designation.

a superseding indictment with various drug offenses. (We are not here concerned with the "others.") In Count 1 the Barrios were jointly charged with conspiring from 1996 to 2000 with each other, with their two co-defendants, as well as with 11 other persons who were identified by name, to possess with an intent to distribute in excess of 5 kilograms of cocaine powder, in excess of 50 grams of cocaine base (crack), and in excess of 100 grams of phencyclidine (PCP), in violation of 21 U.S.C. § 841(a)(1). In Counts 3, 6, 7 and 9 Roberto Barrio was charged with causing interstate travel in aid of an unlawful activity in violation of 18 U.S.C. § 1952(a)(3). In Counts 8, 10 and 13 Roberto Barrio was charged with using a telephone to facilitate cocaine distribution in violation of 21 U.S.C. § 843(b).

As indicated, Elsa Barrio was jointly charged, along with her husband, Roberto Barrio, and others, with the conspiracy alleged in Count 1. Elsa Barrio was individually charged in Counts 4 and 5 with interstate travel violations, and in Count 13 she and Roberto Barrio were jointly charged with a telephone count. Only Roberto and Elsa Barrio were tried, the other defendants in the superseding indictment, as well as the other defendants in the original indictment, entering guilty pleas.

At the close of the government's evidence, the Barrios calling no witnesses, the district court, on motion, entered a judgment of acquittal for both Barrios on Count 13, a telephone count. The jury thereafter convicted both Barrios on all remaining counts.

At sentencing, Roberto Barrio was sentenced to a mandatory sentence of life imprisonment on Count 1, the conspiracy count. On Counts 3, 6, 7 and 9, Roberto Barrio

was sentenced to 60 months imprisonment on each Count. On Counts 8 and 10, Roberto Barrio was sentenced to 48 months on each count. All of the sentences imposed on Roberto Barrio were to run concurrently.

At sentencing, Elsa Barrio was sentenced to imprisonment for 121 months on Count 1, and to 60 months imprisonment on Counts 4 and 5, all to be served concurrently. Both appeal their respective convictions and sentences.

<u>No. 00-6387, United States v. Roberto Barrio</u>

Appellate counsel for Roberto Barrio, who did not represent Barrio at trial, frames his first ground for reversal as follows: "The district court erred in permitting the government to offer untrue evidence about its plea bargain with Ellis Stanton." Stanton was a "leader" of the drug operation and was admittedly a "key" witness for the prosecution. Stanton was charged with some 51 drug offenses and, in a plea agreement with the government, he pled guilty to two counts, one charging conspiracy to possess and distribute controlled substances, and a second charging conspiracy to money launder, with the remaining 49 counts to be dismissed. In that agreement, which consisted of some 16 typewritten pages, Stanton agreed, *inter alia,* to testify "truthfully before the grand jury and at any trial or other court proceedings, if requested to do so by the United States."

As indicated, only the two Barrios out of all the defendants named in both an original indictment and the superseding indictment went to trial. Stanton testified at length at the Barrios' trial to a jury. This testimony indicated that he was indeed a leader of a drug

- 3 -

distribution operation in and around Oklahoma City, Oklahoma. He testified that he purchased various drugs, including cocaine powder, crack cocaine, and PCP from various suppliers located in California, and elsewhere, the Barrios being two of the suppliers of cocaine powder. The drugs were brought from California to Oklahoma by various and assorted couriers, where the drugs were processed, distributed, and then sold on the streets. In connection with this drug operation both Barrios, on occasion, traveled from California to Oklahoma.

As above stated, Stanton, represented by counsel, entered into a plea agreement with the government and did not himself go to trial. He was a "key" witness at the Barrios' trial, and at that trial, Stanton's plea agreement was fully explored, first by government counsel, and then by counsel for the Barrios (each had his or her own counsel), the latter attempting to show the jury that Stanton had a strong "motive" for testifying untruthfully, i.e. concessions made by the government in exchange for his testimony against the Barrios. In his direct testimony Stanton testified that pursuant to his plea agreement he pled guilty to conspiracy to possess and distribute cocaine powder, crack cocaine and PCP and that the potential sentence therefor was 10 years to life. He stated that he has also pled guilty to conspiring to money launder and that the sentence on that charge was 1 to 20 years imprisonment. In exchange, he testified, the remaining 49 charges against him were to be dismissed on motion of the government. Under questioning by the government attorney, Stanton testified that his attorney had advised him that the plea agreement would have no

- 4 -

effect on the sentence he would receive based on his guilty pleas, and that the sentences would be a matter for the district judge. Respective counsel for each of the Barrios thereafter cross-examined Stanton at length concerning the details of the plea agreement and what he expected from the government in exchange for his testifying against the Barrios.

On redirect examination, the government asked Stanton the following question: "and when those other counts were dismissed, as we agreed in the plea agreement, it has no effect whatsoever on the sentence you're facing; is that correct?" To which question Stanton answered: "no, ma'am, it doesn't." At that point counsel for Elsa Barrio objected, at a side-bar discussion, saying it was a "misstatement of the law," as "some of those counts the court would have to be run consecutively, which would have a difference in his plea agreement and his sentence if the counts are to be run consecutively without the court's discretion." The colloquy culminated when the district judge asked the government attorney to "rephrase" her question, whereupon the government attorney, in the hearing of the jury, put the following question to Stanton: "Mr. Stanton, again, is it your understanding, from talking to your attorney, that the dismissal of those counts has no effect on the sentence that you're facing?" There was no objection to this rephrased question, which Stanton answered: "Yes, ma'am. That's right."

On appeal, present counsel for Roberto Barrio argues that Stanton, on redirect examination by the government, testified "falsely" when he indicated that the dismissal of the 49 counts "had no effect whatsoever on the sentence that . . . [he was] facing." Counsel

suggests that not only was Stanton's answer "untruthful," but that the government attorney knew it was untruthful. We believe that counsel's argument in this regard in this Court is a bit extravagant, and not supported by the record. The particular argument regarding Stanton's testimony, now urged in this Court, was not made in the trial court. We frankly do not follow the suggestion that since each of the 49 counts dismissed pursuant to the plea agreement carried, *inter alia*, a mandatory special assessment of $100.00, such in some manner could affect the sentence he was "facing," i.e., the sentence on his guilty plea to two counts of conspiracy. The role the plea agreement played in this trial was fully explored by counsel for the government and by defense counsel and we reject the suggestion that Stanton testified untruthfully in this regard, and that the government knew it was untrue. Stanton's credibility was fully explored by counsel, and it was a matter for the jury to decide.

Counsel for Roberto Barrio next argues that the district court erred in failing to follow the dictates of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which predated the trial of the instant case by a couple of weeks. In that case the Supreme Court held that "[o]ther than the fact of a prior criminal conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. In response to *Apprendi*, the government on July 5, 2000, filed a superseding indictment which, as stated at the outset, identified the conspiracy as one to possess and distribute in excess of 5 kilograms of cocaine powder, in excess of 50 grams of crack cocaine, and in excess of 100 grams of PCP. In finding the Barrios guilty of

conspiracy (Count 1), the jury by special interrogatories found Roberto Barrio guilty of conspiracy to possess and distribute in excess of 5 kilograms of cocaine powder, in excess of 50 grams of crack cocaine, but not guilty of conspiracy to possess and distribute PCP. As to Elsa Barrio, in a special interrogatory the jury found her guilty of conspiracy to possess and distribute in excess of 5 kilograms of cocaine powder, but not guilty of conspiracy to possess and distribute crack cocaine, or to possess and distribute PCP.

If we understand it, counsel argues that because the jury found Elsa Barrio not guilty of conspiring to possess and distribute 50 grams of crack cocaine, such somehow precludes the jury from finding that Roberto Barrio and Elsa Barrio conspired to possess and distribute in excess of 5 kilograms of cocaine powder. Be that as it may, counsel for Roberto Barrio as his second ground for reversal argues that "in the aftermath of *Apprendi*, Mr. Barrio's conspiracy conviction was unsupported by sufficient evidence." We are not persuaded by counsel's assertion that the government has identified no "second conspirator" who had the same conspiracy objective which the jurors attributed to Mr. Barrio. As stated, Roberto Barrio was not only charged with conspiring with his wife, Elsa, but was also charged with conspiring with his two co-defendants and 11 other persons, (including Stanton), who were all identified by name. Counsel, in our view, underreads the record and overreads *Apprendi*.

As the third ground for reversal, counsel for Roberto Barrio claims that "the district court erred in permitting a non-unanimous verdict on the conspiracy count." As indicated, in Count 1 of the superseding indictment, the conspiracy count, the Barrios were jointly

charged with conspiring with each other, and others, to possess and distribute in excess of 5 kilograms of cocaine powder, in excess of 50 grams of crack cocaine, and in excess of 100 grams of PCP. By it's verdict, the jury found both Barrios guilty of Count 1. As stated, the jury in answers to special interrogatories found Roberto Barrio and his wife Elsa guilty of conspiracy to possess and distribute in excess of 5 kilograms of cocaine powder; found Roberto Barrio, but not Elsa, guilty of conspiracy to possess and distribute in excess of 50 grams of crack cocaine; and found neither Roberto or Elsa guilty of a conspiracy to possess and distribute PCP in any amount. Again, counsel would make much of the fact that the jury found Roberto Barrio guilty of conspiring to possess and distribute in excess of 50 grams of crack cocaine, but did not so convict Elsa Barrio. Such, argues counsel, proves that the jury's verdict was not "unanimous" when the jury found both Barrios guilty of conspiring to possess and distribute five kilograms of cocaine powder and constitutes a fatal "variance" between "pleading and proof."

In *United States v. Hauck*, 980 F.2d 611, 615 (10th Cir. 1992) we held that "it is permissible to charge a single offense [conspiracy] but specify alternate means to commit the offense." An offense may be alleged in the conjunctive, but then proven in the disjunctive. *Griffin v. United States,* 502 U.S. 46, 56 (1991); *United States v. Vaziri,* 164 F.3d 556, 566 (10th Cir. 1999); *United States v. Hanzlicek,* 187 F.3d 1228, 1235 (10th Cir. 1999). As we understand it, counsel for Roberto Barrio does not disagree with such. Rather, counsel seems to argue that because the jury found Roberto Barrio guilty of conspiring to possess and

distribute more than 50 grams of crack cocaine and found Elsa Barrio not guilty of conspiring to possess and distribute more than 50 grams of crack cocaine, it could not thereafter find both Barrios guilty of conspiring to conspiring to possess and distribute more than 5 kilograms of cocaine powder. We disagree. As mentioned, under the government's theory of the case, Roberto Barrio was not just conspiring with his wife, Elsa, but he was also conspiring with, including by way of example, Ellis Stanton, one of the alleged co-conspirators, and the object of the conspiracy was not a single possession and distribution, but one that continued over a period of some 5 years. Further, the instructions given the jury on this matter were in our view adequate.

Counsel's fourth ground for reversal is that "the district court erred in imposing a life sentence under the erroneous belief that it was mandatory," arguing that the United States failed to comply with 21 U.S.C. § 851(a).

21 U.S.C.§ 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subsection shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C.§ 841(b)(1)(A)(ii) sets the sentence at not less than 10 years imprisonment or more than life. That same statute provides that if a person commits such a violation "after a prior conviction for a felony drug offense has become final," the sentence shall be not less than 20 years and not more than life imprisonment. The statute then goes on to provide that if a person "commits a violation of this paragraph . . . after two or more prior convictions for a

felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release."

21 U.S.C.§ 851 in pertinent part, reads as follows:

**(a) Information filed by United States Attorney**

(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon. Upon showing by the United States attorney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence.

On July 7, 2000, a Friday, the United States Attorney filed an "Information to Establish Prior Convictions," wherein she stated that Roberto Barrio had suffered three prior drug trafficking convictions and that under 21 U.S.C.§ 841(b)(1)(A)(ii) "the penalty for Count 1 of the superseding indictment is therefore increased to life imprisonment." Attached to that "Information" was a "Mailing Certificate" certifying that "a true copy of the foregoing pleading was served on the parties hereto, Charles Douglas, Attorney for Defendant Roberto Barrio, P.O. Box 472, Norman, Oklahoma 73070 by mailing the same to them on the 7th day of July, 2000." Trial commenced the following Monday, on July 10, 2000.

On appeal, counsel argues that the district court was mistaken when it believed that

it had to sentence Roberto Barrio to life imprisonment on Count 1 because, primarily, the United States Attorney had failed to follow 21 U.S.C. § 851. So far as we can tell, this precise matter was not raised in the district court. The presentence investigation report does reflect that counsel did object, *inter alia*, to that part of the report which states that the sentence on Count 1 was mandatory life imprisonment. In this regard, the district court followed the presentence report, and sentenced Roberto Barrio to life imprisonment on Count 1, the conspiracy count. We are not persuaded by counsel's argument in this Court that Federal Rules of Criminal Procedure 49 and 45 and Federal Rule of Civil Procedure 5(b) have particular present pertinency. This matter is governed by 21 U.S.C. § 851. Counsel also argues that in any case the rationale of *Apprendi* dictates that these prior convictions should have been alleged in the superseding indictment and proven at trial. Counsel concedes that this particular argument was made, and rejected by us in *United States v. Wilson*, 244 F.3d 1208, 1216-17 (10th Cir. 2001), but asserts that the argument was nonetheless made "in order to preserve it for any later stages of review which may occur in the case."

As his fifth, and last, ground for reversal counsel asserts that: "The travel act counts do not charge crimes, because they allege no post-travel activity." The Travel Act counts are, as indicated, Counts 3,6,7, and 9 of the superseding indictment, and are based on 18 U.S.C. § 1952. That statute, in pertinent part, reads as follows:

**§ 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises**

    (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to–

. . .

    (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of any unlawful activity,

and thereafter performs or attempts to perform–

    (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both or

. . .

Counsel's argument, as we understand it, is not that the government's evidence adduced at trial did not show a violation of the Travel Act by Roberto Barrio. In this regard, the government's evidence showed that at the behest of Stanton couriers on numerous occasions flew from Oklahoma to California and Nevada, where they received cocaine powder from Roberto Barrio and returned therewith to Oklahoma where they delivered the drugs to Stanton, or his representatives. Quite obviously, the couriers "possessed" the drugs in Oklahoma *after* their interstate travel and "delivered" the drugs in Oklahoma. Counsel's position, as we understand it, is that the government in Counts 3,6,7 and 9 of the superseding indictment did not allege any "overt act . . . [occurring] after the interstate travel is complete." In this regard, we note, by way of example, that in Count 3 of the superseding indictment the government alleged that Roberto Barrio and Stanton caused one Gandy to

- 12 -

travel in interstate commerce from Oklahoma City, Oklahoma to the Ontario, California area and back to the Oklahoma City, Oklahoma area with an intent to promote an unlawful activity, a business activity involving narcotics or controlled substances, "and *thereafter* performed and attempted to perform acts to promote, manage, establish, carry on and facilitate the promotion, establishment and carrying on of said unlawful activity, to wit: to transport approximately two kilograms of cocaine powder to Oklahoma City, Oklahoma for redistribution" (emphasis added). (Similar allegations are made in Counts 6,7, and 9.) Such, in our view, is sufficient to charge a violation of 18 U.S.C. § 1952. In addition*, in United States v. Stevens*, 612 F.2d 1226 (10th Cir. 1979), we spoke as follows:

> Appellant's argument that no overt act was charged in the travel act count does not impress us. Overt acts are alleged and were proved in connection with the conspiracy count. We do not think it is necessary to reallege overt acts with respect to the conspiracy in the travel act count, which fairly meets the standard set forth in *Levine. See United States v. King,* 521 F.2d 61 (10th Cir. 1975); *United States v. Levine,* 457 F.2d at 1188 n.1.

*Id.* at 1230-31. In Count 1 of the superseding indictment in this case, charging conspiracy, "overt acts" were set forth in detail.

In conclusion we note that most of the matters raised on appeal were not raised in the district court. And none, viewed in context, constitute "plain error" requiring reversal. *United States v. Olano*, 507 U.S. 725, 732 (1993); *United States v. Cernobyl*, 255 F.3d 1215, 1218 (10th Cir. 2001); *United States v. Hishaw*, 235 F.3d 565, 574 (10th Cir. 2000).

Judgment affirmed.

Elsa Barrio appeals her convictions on Counts 1 (conspiracy), 4 and 5 (interstate travel) of the superseding indictment. Counsel asserts two grounds for reversal: (1) "[a]n impermissible variance existed between the indictment, which charged a single conspiracy, and the proof at trial which established the existence of multiple conspiracies;" and (2) "[t]he 'Travel Act' convictions must be reversed because the government failed to allege an overt act in furtherance of illegal activity performed after the interstate travel which is an essential element of the crime." We are not persuaded by either argument.

Count 1 charged a single conspiracy with multiple objectives, which is permissible. *See Griffin v. United States,* 502 U.S. 46 (1991); *United States v. Pace,* 981 F.2d 1123, 1129 (10th Cir. 1992). We reject the suggestion that there was a fatal variance between Count 1 in the superseding indictment and the proof presented by the government at trial. Nor was there any so-called prejudicial "spill over" effect. The jury by its verdict and answer to special interrogatories found that Elsa Barrio was guilty of conspiracy with others to possess and distribute in excess of five kilograms of cocaine powder, and the fact that the jury found her not guilty of conspiring with others to possess and distribute crack cocaine or PCP, does not affect her conviction on the first. In other words, a single conspiracy may have multiple objectives and it does not thereby become a multiple conspiracy. A defendant charged with a single conspiracy with multiple objectives may be convicted upon a showing that he conspired to commit any one, and not all, of the multiple objectives. *United States v. Vaziri,*

104 F.3d 556, 566 (10th Cir. 1999); *United States v. Bell,* 54 F.3d 1205, 1209 (10th Cir. 1998).  A single conspiracy with multiple objectives may be pled in the conjunctive and proved in the disjunctive. *Id.*  The gravamen of a single conspiracy with multiple objectives is the conspiracy, not the objectives.  See *Braverman v. United States,* 317 U.S. 49, 54 (1942) where the Supreme Court said: "The allegations in a single count of a conspiracy to commit several crimes is not duplicitous, for 'the conspiracy is the crime, and that is one, however diverse its objects.'" (Citations omitted.)

As above indicated, the interstate travel counts meet the requirements of 18 U.S.C. § 1952.

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge