**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**RICHARD MOTTA, Defendant**

Criminal No. 80/46

District Court of the Virgin Islands

Div. of St. Croix

June 6, 1980

ROBERT TIGNOR, ESQ., Special Assistant United States Attorney, Christiansted, St. Croix, V.I., *for plaintiff*

EDWARD J. OCEAN, ESQ., Christiansted, St. Croix, V.I., *for defendant*

BROTMAN, *Judge By Special Assignment*

## MEMORANDUM OPINION

This is a criminal prosecution for rape, robbery, burglary and assault. It is now before the Court on motion of defendant to suppress certain real evidence alleged to have been seized in violation of defendant's fourth amendment right to be free from unreasonable arrests, searches and seizures. A hearing was held on defendant's motion on 4 June, 1980 pursuant to Fed. R. Crim. P. 12(b)(3). On the basis of facts established at this hearing, defendant's motion will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

At approximately 1:30 A.M. on 22 February, 1979, the Virgin Islands Department of Public Safety received a report that a series of violent crimes had taken place moments before at The Reef Condominium located at Teague Bay in St. Croix. Patrol vehicles were immediately dispatched to the scene. One of the vehicles, while proceeding to the scene via the South Shore road, encountered another vehicle travelling in the opposite direction at an excessive rate of speed. The police driver positioned his vehicle in the center of the road in an attempt to block the suspect vehicle, but the suspect vehicle successfully avoided this maneuver by moving to the extreme left side of the road. A slight impact occurred between the two vehicles as they passed one another.

At the moment of impact police officer Herman Hendricks, who was sitting in the passenger seat of the police car, observed three individuals in the suspect vehicle. Although unable to positively identify any of these persons, he believed at the time that the individual sitting in the front passenger's seat was the defendant.[1]

The police then turned around to pursue the vehicle, which had disappeared around a bend in the road. Upon turning the bend, the police observed the suspect vehicle off the road in dense vegetation, abandoned. Inside the vehicle were found guns, masks and several items which had been stolen from The Reef Condominium moments before. The car was found to be owned by one Shelley Joseph, known by the police to be a friend of the defendant.

Later that morning, at approximately 3:00 A.M., police officers

---

[1] Officer Hendricks testified with candor to his lack of certainty as to this identification, which lends credence to other portions of his testimony. Because the only available light was from the headlights of the two vehicles he was able to observe the occupants only in silhouette. His somewhat uncertain recognition of the defendant's features was made possible only by the fact that he had been personally acquainted with the defendant for many years.

went to the apartment which defendant shared with Miss Charlene Constance. Despite the fact that the officers knocked forcefully on the door and windows no one responded from inside the apartment. The police then left but returned at about 4:00 A.M. to place the apartment under surveillance.

Sometime between 5:30 and 6:00 A.M. the officers again approached the apartment and knocked on the door. This time the door was opened by Miss Constance. The police inquired as to the whereabouts of the defendant and were told that he was inside. The defendant then came to the door. After a brief discussion, at which time defendant represented to the police that he had been home all night, the defendant accompanied the police to police headquarters for questioning.

At headquarters the police requested hair samples from defendant's head and pubic area. Although defendant refused, samples were taken under threat of force.[2] Defendant now seeks to suppress all evidence relating to these hair samples on the basis that they were seized without a warrant.

Later that morning other police officers went to defendant's apartment where they were met by Miss Constance. They told her that the defendant had consented to a search of the apartment but she refused to let them enter without a warrant. The officers thereupon contacted headquarters by radio to have the defendant brought to the apartment.

Upon the defendant's arrival at the apartment a short conversation took place at the doorway. After this conversation the police entered and searched the apartment. The officers found and seized a pair of coveralls, a bandanna, a sock and a length of electrical cord. Defendant now seeks to suppress these items contending that the search was made without a warrant and without proper consent.

## II. DISCUSSION

### A. *Pubic Hair Samples*

It is uncontroverted that pubic hair samples were taken from the defendant without his consent and without a warrant. Furthermore, it is clear that no exigent circumstances existed which would justify a warrantless search.[3]

---

[2] Defendant was told by one of the investigating officers that if he did not drop his pants that they would be ripped off. It is manifest that the defendant did not consent to this warrantless search.

[3] A search of defendant's pubic area was made for two purposes: to obtain samples of his own hair and to search for the presence of hairs from the rape victim. The

■ The fourth amendment protects one's body from unreasonable searches and seizures no less than it protects one's home. Schmerber v. California, 384 U.S. 757, 770 (1966). Furthermore, few areas of one's anatomy can be considered more "private" than the genital area which defendant was forced to expose for examination by the police. Such a procedure has been held to require full compliance with the fourth amendment. Bouse v. Bussy, 573 F.2d 548 (9th Cir. 1977). Because the police did not obtain a warrant for this search and because no circumstances existed which justified their failure to do so, all evidence seized as a result of this search must be suppressed.

B. *Head Hair Samples*

■ Although the police were required to obtain a warrant for the non-consensual search of the defendant's pubic area, the same is not true with respect to the seizure of hair from the defendant's head. It is well settled that some investigative procedures intended to obtain evidence from the person are of such a minor nature and involve such a minimum degree of intrusion into the personal integrity of a suspect that such seizures may be reasonable even absent a warrant. United States v. Bridges, 499 F.2d 179, 184 (7th Cir. 1974) (swabbing of defendant's hands to obtain residual traces of explosives). This class of seizures has been held to include the involuntary removal of hair samples from the head of a suspect in custody. United States v. D'Amico, 408 F.2d 331 (2d Cir. 1969). In the case before the Court, the police obtained the head hair samples without violence. No painful or embarrassing procedure was utilized. No exposure of sensitive body areas was required. The entire procedure was certainly no more offensive than the ordinary process of fingerprinting. It is, therefore, the opinion of this Court that the taking of head hair samples without a warrant was reasonable in this case.

■ Having. found the seizure of the head hair samples to have been reasonable, there remains the question of whether the defendant was lawfully in custody. If he was being illegally detained at the time such samples were taken, the hair samples would be the fruit of an illegal arrest and, thus, subject to the exclusionary rule.

government has suggested that the victim's hairs could have been removed by the defendant and, thus, an immediate search was justified. In response it need only be noted that the defendant was in police custody at the time and was under constant observation. It would have taken little time or effort to have obtained an authorization for the search from a detached and neutral magistrate.

Davis v. Mississippi, 394 U.S. 721 (1969). Resolution of this issue hinges on whether, at the time the defendant was taken into custody, the police had probable cause for his arrest.

 As stated before, a police officer who was well acquainted with the defendant tentatively identified him as one of the occupants of the fleeing vehicle encountered by the police shortly after the crimes were committed. Evidence found in the vehicle, including items of stolen property, connected this vehicle with the crime. The defendant was known to be a friend of the owner of this vehicle. An early morning visit to the defendant's apartment, in which the police banged forcefully on the door and windows, gave strong indication that the defendant was not at home shortly after the commission of the crime. When first questioned by the police at his apartment the defendant stated that he had been home all night, a statement which the police had strong reason to doubt in view of the earlier police visit. Considering the totality of the circumstances, the police had probable cause to detain the defendant. Because he was lawfully in custody, the seizure of samples of his head hair was not the fruit of an illegal arrest.[4]

## C. *The Search of the Apartment*

It is undisputed that the police searched the defendant's apartment without first having obtained a warrant. It is also clear that the police had adequate time and opportunity to do so. The lawfulness of this search, therefore, hinges on whether it was made with the consent of the defendant. To make a finding as to this issue the Court must resolve certain conflicts in the testimony of Miss Constance, the defendant and certain police officers who participated in the search.

Miss Constance testified to the effect that the police returned to the apartment after having taken the defendant to police headquarters and told her that the defendant had consented to a search of the premises. Miss Constance refused to allow them into the apartment,

---

[4] For the purpose of this motion the Court will assume that defendant was in police custody involuntarily, although there is some evidence that he consented to go with the police for questioning. In any event it seems reasonable to believe that when the pubic hair samples were taken without the defendant's consent he was being detained against his will. Because the police had probable cause to believe that the defendant had participated in a series of serious and brutal felonies mere hours before and because he was taken into custody after having voluntarily appeared outside of his apartment, no warrant was required for his arrest. United States v. Watson, 423 U.S. 411 (1976).

494

however. A short time later the defendant was brought to the apartment. According to Miss Constance, the defendant said nothing to her or to the police in her presence, but merely stood by while the police entered the apartment and searched it.

The defendant's version is somewhat different. He stated on direct examination by defense counsel that he had told the police that:

They can't search unless they have permission from she [Miss Constance] because it's her apartment.

On cross-examination he stated that:

I told them I don't mind if they search, but they have to have permission from she or a search warrant.

The defendant also testified on cross-examination that he had told the police that he had nothing to hide and that a search of the premises would reveal nothing incriminating.

The testimony of the police officers who participated in the search yields yet a third version. Officer Herman Hendricks testified that after being returned to his apartment defendant had a short conversation with Miss Constance:

He said—when the lady was being kind of rude—he said he don't have anything to hide they could go ahead and search. So we began to search.

Officer Howard Daniels testified in a similar vein. He stated:

He told her he had given us permission and he don't have anything to hide so let them search.

Officer Franz Christian gave a somewhat more detailed account:

. . . Mr. Motta was brought to his residence where he told his girlfriend its O.K., he doesn't have anything to hide . . . .

Upon questioning by the Court, the following colloquy took place:

Q. And who asked him the question as to whether or not he would allow a search of the premises?

A. The investigating officer, sir, it was Hendricks. He had spoke to Mr. Motta, his girlfriend doesn't believe that he gave the consent, and Mr. Motta went to the apartment and told his girl it was O.K.—he doesn't have anything to hide.

Q. Those were his words?

A. His exact words were: "Let them go in to search, I don't have anything to hide."

Q. Then what happened?

495

A. He let us in.

Q. Did he open the door?

A. Mr. Motta knocked on the door and his girlfriend opened the door when she saw it was him, and he invited us in.

Q. He invited you in?

A. Yes, sir.

After having observed the demeanor of the witnesses and having heard their testimony on this and other matters, the Court finds as fact—having been proved by a preponderance of the evidence—that the defendant gave his express permission for the search of the apartment in the presence of Miss Constance just prior to the search. The testimony of the police officers was both consistent and credible, and is corroborated to some extent by the testimony of the defendant, himself. It seems entirely credible that the defendant believed, as he stated on cross-examination, that a search of the apartment would reveal nothing incriminating.[5] In an effort to appear cooperative and to avoid further suspicion, the defendant gave the police permission to search the apartment despite the objection of Miss Constance, thereby waiving his fourth amendment privilege.[6]

■ Even if one were to disregard the testimony of the police officers, a waiver of the fourth amendment privilege can be found from the testimony of the defendant. As he stated on cross-examination, he told the officers that he didn't mind if they searched the apartment, but told them that "they have to have permission of she [sic] or a search warrant." Defense counsel argues that his consent by the defendant, absent the concurrent permission from Miss Constance, was ineffective as a waiver of the defendant's fourth amendment privilege.

■ The defendant testified that he lived in the apartment with Miss Constance, contributed to pay the rent, and generally exercised equal control over the premises with her. The seized articles were taken from a bag containing the defendant's dirty clothing. Where

---

[5] Indeed, the items seized were not intrinsically incriminating. The truly damning evidence, the guns, masks and stolen items, had been abandoned with the automobile.

[6] All of the circumstances point to a voluntary waiver. The permission was given outside of defendant's own home under circumstances which were not intrinsically coercive. The defendant was not handcuffed nor had he been physically mistreated. Defendant admitted on cross-examination that he wanted to be helpful and that he had nothing to hide from the police.

496

co-inhabitants have equal rights of access to the premises sought to be searched, either one may consent to a search of the premises. United States v. Matlock, 415 U.S. 164 (1974).

■ Although some aspects of the search may have been violative of the rights of Miss Constance,[7] defendant lacks standing to raise any violation of her rights of privacy as a basis for objection to the entry of the seized articles into evidence. See, e.g., Wong Sun v. United States, 371 U.S. 471, 492 (1963).

Having found that the defendant consented to the search of the apartment, the Court concludes that the search was legal and that the real evidence seized was legally obtained.

## III. CONCLUSION

The pubic hair samples obtained from defendant without a warrant and without his permission were illegally obtained and, thus, must be suppressed. The head hair samples, however, were seized in a reasonable manner and were not the fruit of illegal detention, and, thus, may be offered into evidence at trial. The search of the defendant's apartment was pursuant to the consent of the defendant and, thus, the articles seized pursuant to the search were legally obtained.

## ORDER

Defendant has moved to suppress certain real evidence. An evidentiary hearing was held on the matter pursuant to Fed. R. Crim. P. 12(b)(3). The Court having received evidence and having heard the argument of counsel, the premises considered and in accordance with the memorandum opinion of even date, it is hereby

ORDERED THAT:

(1) Defendant's motion be, and is hereby, GRANTED with respect to the samples of pubic hair seized from the defendant on 22 February, 1979. Said samples may not be offered into evidence at trial nor may any testimony or scientific evidence relating to said samples be offered into evidence at trial; and

(2) In all other respects defendant's motion be, and is hereby, DENIED.

---

[7] There was some testimony to the effect that the police searched drawers in the apartment which were personal to Miss Constance.